Rockingham
No. 2002-146

THE STATE OF NEW HAMPSHIRE

v.

GREGORY DAVIS

Argued: May 8, 2003
Opinion Issued: July 18, 2003

*Peter W. Heed*, attorney general (*Stephen D. Fuller*, senior assistant attorney general, on the brief and orally), for the State.

*Twomey & Sisti Law Offices*, of Chichester (*Mark L. Sisti* on the brief and orally), for the defendant.

NADEAU, J. The defendant, Gregory Davis, appeals his conviction of two counts of being a felon in possession of a dangerous weapon, *see* RSA 159:3 (1994) (amended 2001), arguing that the Superior Court (*Coffey*, J.) erred in failing to suppress evidence and dismiss all indictments for lack of specificity. We affirm.

The trial court found the following relevant facts for purposes of ruling on the defendant's motion to suppress. Some time prior to June 12, 1999, an informant notified the Salem Police Department that illegal goods, including pornography, mace, pepper spray, stun guns and illegal knives, were being sold at the Salem flea market. The police planned a plain-clothes sweep of the flea market, which was carried out on June 12, 1999. Six to eight officers and detectives, led by Detective Sergeant Cavanaugh,

looked for weapons declared by RSA 159:16 (2002) to be illegal to sell, possess with intent to sell, or carry. Detective Sergeant Cavanaugh determined the weapons to be seized as other officers held them up for him to see.

During the sweep, the police saw weapons displayed openly at two of the defendant's booths. After weapons at the defendant's booth were identified as illegal by Detective Sergeant Cavanaugh, and the defendant admitted that he owned the weapons, the defendant was issued a receipt for the seized weapons and a misdemeanor citation for violation of RSA 159:16. Detective Sergeant Cavanaugh later ran a check on vendors from whom the police had seized items, and, upon discovering that the defendant was a convicted felon, issued a warrant for his arrest for violation of RSA 159:3.

The defendant moved to suppress the evidence seized from his booths, arguing that the warrantless search and seizure violated Part I, Article 19 of the State Constitution and the Fourth and Fourteenth Amendments to the Federal Constitution. The trial court denied the motion to suppress, ruling that the seizure fell under the plain view exception to the warrant requirement. The defendant also moved to dismiss the indictments against him, arguing that the illegal items he was alleged to have possessed were "not set forth with sufficient specificity to [enable him to] defend against the allegation." At trial, the court dismissed all but three of the indictments, and the State elected not to proceed on one of them. The defendant was convicted on the remaining two counts of being a felon in possession of a dangerous weapon, the weapons having been specified in the indictments as stiletto knives and double-edged knives.

On appeal, the defendant argues that the trial court erred in finding that the seizure of weapons from his booths fell within the plain view exception to the warrant requirement. We first address his claim under the State Constitution, and cite federal opinions for guidance only. *See State v. Ball,* 124 N.H. 226, 231, 233 (1983). "Our review of the superior court's order is *de novo,* except as to any controlling facts determined at the superior court level in the first instance." *State v. Hammell,* 147 N.H. 313, 317 (2001) (quotation omitted).

Warrantless seizures are *per se* unreasonable under Part I, Article 19 of the State Constitution "unless they fall within the narrow confines of a judicially crafted exception." *State v. Brunelle,* 145 N.H. 656, 659 (2000) (quotation omitted). The State bears the burden of proving that a seizure falls under a recognized exception. *See id.*

■ We have recognized a plain view exception to the State Constitution's warrant requirement. *See State v. Smith,* 141 N.H. 271, 275 (1996). To validate a seizure under this exception, the State must prove, by

a preponderance of the evidence: "(1) The initial intrusion which afforded the view must have been lawful; (2) the discovery of the evidence must have been inadvertent; and (3) the incriminating nature of the evidence must have been immediately apparent." *Hammell*, 147 N.H. at 317 (quotation omitted).

The trial court found it unnecessary to address the first prong of the test because "[t]he defendant d[id] not dispute that the police were lawfully on the premises of the flea market on June 12, 1999." The defendant does not challenge that ruling on appeal. He does, however, contend that the remaining two prongs are not satisfied.

The defendant argues that the discovery of weapons at the defendant's booths was not inadvertent because the police organized the sweep ahead of time, which included conducting a training session to educate the sweep team as to what kinds of weapons are illegal, and "went to the flea market with the specific intent to recover illegal weapons." While our case law has not "settled the limits of inadvertence[,] [i]t is reasonably clear . . . that discovery is inadvertent if, immediately prior to the discovery, the police lacked sufficient information to establish probable cause to obtain a warrant to search for the object." *State v. Cote*, 126 N.H. 514, 526 (1985) (citation omitted).

■ The trial court found that while the informant's tip "justified investigation of the flea market, it did not rise to the level of establishing probable cause to obtain a warrant to seize specific items from the defendant." We agree. There was no evidence before the trial court that the police knew anything specific about the defendant or the types of items he was selling prior to the sweep. Thus, while the police had a justifiable suspicion that they would find contraband somewhere at the flea market, they did not have probable cause to obtain a warrant to search the defendant's booths. Accordingly, discovery of the weapons at issue was inadvertent for purposes of the plain view doctrine. *See id.* at 526-27.

■ The defendant next argues that the incriminating nature of the items seized from him was not immediately apparent. "The 'immediately apparent' requirement is met if, at the time of the seizure, the officer has probable cause to believe that the object seized is incriminating evidence." *State v. Murray*, 134 N.H. 613, 615 (1991) (quotation omitted). The probable cause required under the plain view exception "is at least as great as that required to support a warrant," but need not be greater. *State v. Maguire*, 129 N.H. 165, 170 (1987) (quotation omitted). In addition, "the expertise and experience of the law enforcement officer are relevant to the probable cause determination. Officers are entitled to draw reasonable inferences from the facts available to them in light of their

knowledge and prior experience." *Ball*, 124 N.H. at 236. Thus, "in some situations, a trained policeman's observations of certain types of contraband will be deemed sufficient to meet the requirements of the plain view doctrine." *Id.* at 236-37.

Citing trial testimony, the defendant argues that because it is unclear which officer on the sweep team seized which weapon, it is impossible to determine whether that officer had the training and experience to recognize the illegality of the item. We note that this is a different argument from the one the defendant made to the trial court. The defendant argued that the seized "items were not readily recognizable as being contraband or unlawful," due to ambiguity in the definitions of what constituted illegal weapons. The defendant pointed to the sweep team members' holding up of items for Detective Sergeant Cavanaugh's inspection as confirmation of that ambiguity.

■ The trial court noted that Detective Sergeant Cavanaugh, "an avid knife collector and a 22-year veteran of the Salem Police Department," "testified that he could readily identify dirk knives, daggers, stilettos, [and] metallic knuckles," and "identified each of the weapons seized as falling within one of the terms listed in RSA 159:16." The court therefore found that in light of his knowledge and past experience, Detective Sergeant Cavanaugh "reasonably inferred" from the appearance of the seized weapons that they fell under the prohibition of RSA 159:16. Thus, the court found the "immediately apparent" prong satisfied, a conclusion we uphold. *See Ball*, 124 N.H. at 237.

On appeal, the defendant focuses not upon the qualifications of Detective Sergeant Cavanaugh, but upon those of the sweep team members who physically seized the weapons at issue. Testimony at the suppression hearing revealed that on the morning of the sweep, Detective Sergeant Cavanaugh held a training session for the sweep team members for the purpose of familiarizing them with the types of weapons that are illegal. Sweep team members were told that "if there was a question on a particular weapon or a knife, to bring it to [Detective Sergeant Cavanaugh's] attention" for a determination of illegality. During the sweep, when an officer wanted Detective Sergeant Cavanaugh's opinion about a specific weapon, he or she would not actually bring the item to Detective Sergeant Cavanaugh, but would merely hold it up for him to view from about six feet away. Nevertheless, Detective Sergeant Cavanaugh denied that he was a "gatekeeper" for the seizure of evidence, stating rather that he was a supervisor.

We conclude that the evidence supports a finding that the officers had probable cause to seize the weapons at issue. The specific facts of this case

make it one in which "trained policem[en's] observations of certain types of contraband will be deemed sufficient to meet the requirements of the plain view doctrine." *Ball,* 124 N.H. at 236-37. The officers received specific training the morning of the sweep on how to recognize illegal weapons. Although the statutory description of the weapons at issue may mean little to the completely uninitiated, we do not find it unreasonable that a police officer could be quickly trained by a person with Detective Sergeant Cavanaugh's experience to identify such weapons to at least the level of probable cause. Absolute certainty of illegality was not required. Thus, that officers may have held up some items for a more definitive interpretation of illegality by Detective Sergeant Cavanaugh does not indicate that the officers lacked probable cause to believe the items were contraband in the first instance. *Cf. Murray,* 134 N.H. at 616-17. Furthermore, we question whether the officers' conduct in picking up items at a public flea market and showing them to another officer would even constitute a seizure, until a determination of illegality had already been made. We need not decide this question, however, because we find the third prong of the plain view exception met.

At oral argument, the defendant asserted that the plain view exception was inapplicable because some of the weapons were seized from boxes not in plain view and it is impossible to determine which of the items seized were openly displayed and which were taken from boxes. At the suppression hearing, the defendant elicited testimony that officers would ask the vendors "if they had any additional items similar to the ones we were seizing and if they voluntarily brought forward boxes and opened them, we would take the stuff that was obviously to us illegal." However, the defendant never argued below that the plain view exception failed on this basis. Nor did the defendant make that argument in his brief. We therefore consider it waived. *See State v. Fortier,* 146 N.H. 784, 792 (2001) (arguments not briefed are deemed waived); *State v. Natalcolon,* 140 N.H. 689, 691 (1996).

The Federal Constitution affords the defendant less protection in this area than does the State Constitution. *See Horton v. California,* 496 U.S. 128, 137 (1990) (inadvertence of discovery not required for plain view exception under Federal Constitution). Accordingly, we reach the same result under the Federal Constitution.

Finally, the defendant argues that the trial court erred in failing to dismiss the indictments for lack of specificity. Indictment 01-S-0256 alleged in relevant part that on or about June 12, 1999, the defendant committed the crime of being a felon in possession of a dangerous weapon in that:

1. Gregory Davis knowingly,
2. had stiletto knives in his possession at The Salem Flea Market,
3. having previously been convicted of a felony against the property of another, and a felony relating to controlled drugs

   . . . .

Indictment 01-S-0260 alleged in relevant part that on or about June 12, 1999, the defendant committed the crime of being a felon in possession of a dangerous weapon in that:

1. Gregory Davis knowingly,
2. had double-edged knives in his possession at The Salem Flea Market,
3. said knives being dangerous weapons,
4. having previously been convicted of a felony against the property of another, and a felony relating to controlled drugs

   . . . .

■ "Part I, Article 15 [of the State Constitution] requires that an indictment describe the offense with sufficient specificity to ensure that the defendant can prepare for trial and avoid double jeopardy." *State v. Woodard*, 146 N.H. 221, 227 (2001) (quotation omitted). "To this end, the indictment must contain the elements of the offense and enough facts to notify the defendant of the specific charges." *State v. Sinbandith*, 143 N.H. 579, 584 (1999). An indictment is generally sufficient if it recites the language of the relevant statute; it need not specify the means by which the crime was accomplished or any other facts that are not essential elements of the crime. *State v. Chick*, 141 N.H. 503, 506 (1996).

At the time of the charged crimes, RSA 159:3 provided, in pertinent part:

I. A person is guilty of a class B felony if he:

(a) Owns or has in his possession or under his control, a pistol, revolver, or other firearm, or slungshot, metallic knuckles, billies, stiletto, switchblade knife, sword cane, pistol cane, blackjack, dagger, dirk-knife, or any other dangerous weapon; and

(b) Has been convicted . . . of:

(1) A felony against the person or property of another; or

(2) A felony under RSA 318-B . . . .

RSA 159:3 (1994). Thus, the indictments here alleged the essential elements of the charged crimes, as well as the place and approximate date of the crime.

The defendant nevertheless argues that the indictments failed to identify which particular weapons were being charged in which indictment. He also argues that since a stiletto can be either single- or double-edged, the two indictments could describe the same items.

We conclude that the indictments "inform[ed] the defendant of the offense for which he is charged with sufficient specificity so that he knows what he must be prepared to meet" at trial. *State v. Therrien*, 129 N.H. 765, 770 (1987). They informed him that he was charged with possessing a certain type of prohibited weapon at a specific place and time. If the defendant desired more specificity to prepare for trial he could have requested a bill of particulars. The record contains no indication that he did so.

As for the risk of double jeopardy, we note that the State elected at trial which weapons to offer under each indictment. Thus, we find no infirmity on double jeopardy grounds.

The defendant also contends that "[t]he State failed to allege with sufficient specificity evidence in support of [his] alleged mental state of knowingly." He then argues that the State failed to produce sufficient evidence that he knowingly possessed the prohibited weapons. Thus, the defendant actually challenges the sufficiency of the evidence. We conclude that this argument is not encompassed by the question raised in the notice of appeal regarding failure to dismiss the indictments for lack of specificity "in their allegations." Thus, we consider it waived. *See State v. Summers*, 142 N.H. 429, 434 (1997).

*Affirmed.*

BROCK, C.J., and BRODERICK, DALIANIS and DUGGAN, JJ., concurred.