Hillsborough-northern judicial district
No. 2008-751

THE STATE OF NEW HAMPSHIRE

v.

NATHANIEL ERICSON

Argued: October 8, 2009
Opinion Issued: November 17, 2009

*Orville B. Fitch, II,* acting attorney general (*Thomas E. Bocian,* assistant attorney general, on the brief and orally), for the State.

*Sisti Law Offices,* of Chichester (*Mark L. Sisti* on the brief and orally), for the defendant.

DALIANIS, J. The defendant, Nathaniel Ericson, appeals his conviction by a jury of three counts of aggravated felonious sexual assault (AFSA).

*See* RSA 632-A:2 (Supp. 2000) (amended 2003, 2008). On appeal he argues that the Superior Court (*McGuire*, J.) erred by: (1) denying his motion to dismiss an indictment charging the pattern variant of AFSA; (2) denying his motion to dismiss based upon sufficiency of the evidence; (3) allowing the then thirteen-year-old victim to hold Silly Putty in her hands while testifying; and (4) denying his motion *in limine* to exclude evidence that he owned pornographic videos and rubber body parts and showed them to the victim. We affirm.

## I. Background

Viewing the evidence in the light most favorable to the State, the jury could have found the following facts. The victim was born in October 1994. In the late 1990s, she and her sister spent a great deal of time with her mother's half-sister, Rose, and her husband, the defendant, at their cottage on a lake in Hillsborough and at their townhouse at Loon Mountain. During the summer of 1999, the girls stayed with the defendant and Rose for weeks at a time. Until the summer of 2001, they visited the defendant and Rose at least twice monthly.

The defendant began to assault the victim sexually in the summer of 1999, before she knew how to tie her shoes well. These first assaults took place at the lake house. When she and the defendant were alone, he would ask her if she would like to play a game, would bring her into his bedroom, and would take off her clothes and his own. When they were both naked, the defendant would then penetrate the victim's vagina with his tongue and fingers. All told, more than three but fewer than ten incidents of sexual penetration occurred at the lake house. In addition to these incidents, the defendant once attempted to put his penis into the victim's vagina. The victim said that the defendant's penis felt "kind of stiff" and that its skin was "peely." Also at the lake house, the defendant sometimes put the victim in a swing, which she knew was a "sex swing" because she had seen them in the pornography that he had forced her to watch.

The victim alleged that, at the Loon Mountain townhouse, the defendant assaulted her by inserting his fingers and tongue into her vagina after taking her to his bedroom, putting on a strobe light, knocking her to the bed and removing her clothes and his. She also alleged that he put rubber body parts on her, such as rubber breasts and buttocks, and watched pornography with her.

Although the victim told her sister about the assaults, she did not tell any adults because the defendant forbade her from doing so. The victim was afraid to report the assaults because the defendant told her that if she told anyone about them, she would regret it. In 2004, when the victim was in the

fourth grade, she told her father that the defendant was a "child molester," but that she did not want to talk about what he had done to her because she was afraid that he would kill her. She told her father that she was left alone in the lake house with the defendant and showed him where the defendant had touched her. She also told him that the defendant had talked about putting his "boy parts" in her mouth and "girl parts" and about putting his fingers inside her. The victim's father informed the victim's mother about what the victim had told him. The victim's mother did not take her to the police until February 2006 when the victim was finally ready to talk with them.

When interviewed by the police, the defendant told them that he showered with the victim and helped her to clean her bottom after she defecated. He also admitted that the victim may have touched his penis while they were showering and that he had no problem with the victim and her sister seeing him naked. He told the police in the recorded interview: "I think the kids got more of a fascination with the nakedness. For some reason it thrilled them . . . ." He admitted that he kept dildos in a bedroom drawer and that the victim may have found them. He also admitted to owning adult movies, and having a strobe light in his bedroom and a swing at the lake house. He stated that the victim masturbated. Less than an hour after the interview ended, the defendant called the police station and said that if the victim had reported seeing naked pictures, they must have been in a "GREY'S ANATOMY" textbook.

A grand jury in Hillsborough County indicted the defendant on four counts of AFSA. *See* RSA 632-A:2. One indictment alleged that he committed the pattern variant of AFSA between May 1999 and April 2000. *See* RSA 632-A:2, III. The remaining three indictments alleged that, between May 2000 and November 2000, he digitally penetrated or performed cunnilingus on the victim, a child less than thirteen years old. *See* RSA 632-A:2, I(a). One of the three non-pattern indictments was dismissed before trial. A Grafton County grand jury indicted the defendant on one count of felonious sexual assault and two counts of AFSA for the assaults that allegedly occurred at the Loon Mountain townhouse between September 1998 and September 2001. The Hillsborough and Grafton County indictments were joined for trial. Whether joinder was proper is not an issue in this appeal.

At trial, the defendant blamed the victim for their sexual contacts, telling the jury, for instance, that when the victim would try to climb on his lap, she repeatedly reached down to touch his penis through his clothes. He admitted that this kind of contact did not make him feel uncomfortable. He testified also that the victim took his finger and put it down the waistband of her underwear and on her clitoris, at which point he told her that

masturbation was nothing to be ashamed of and that both her mother and his wife masturbated. He claimed that he never told anyone about this incident because the victim asked him not to do so. The defendant denied that he ever penetrated the victim and that he ever had any sexual intent.

The jury convicted the defendant on the pattern indictment and on the remaining two non-pattern Hillsborough County indictments. One of the Grafton County indictments was dismissed at the close of the State's case, and the jury was unable to reach a verdict on the remaining two Grafton County indictments.

## II. Motion to Dismiss Pattern Indictment

■ The defendant first argues that the pattern indictment failed to allege the offense with the requisite specificity to enable him to prepare a defense. *See* N.H. CONST. pt. I, art. 15. Part I, Article 15 of the State Constitution requires that an indictment describe the offense with sufficient specificity to ensure that the defendant can prepare for trial and avoid double jeopardy. *State v. Davis*, 149 N.H. 698, 704 (2003). To be constitutional, the indictment must contain the elements of the offense and enough facts to notify the defendant of the specific charges. *Id.* An indictment generally is sufficient if it recites the language of the relevant statute; it need not specify the means by which the crime was accomplished or other facts that are not essential to the elements of the crime. *Id.*

The pattern variant of AFSA is set forth in RSA 632-A:2, III, which provides, in relevant part: "A person is guilty of [AFSA] when such person engages in a pattern of sexual assault against another person . . . who is less than 16 years of age." A "pattern of sexual assault" means "committing more than one act under RSA 632-A:2 . . . upon the same victim over a period of 2 months or more and within a period of 5 years." RSA 632-A:1, I-c (2007). Consistent with these statutes, the pattern indictment alleged that "on or about May 1999 through and including April 2000 at Hillsborough, New Hampshire," the defendant committed AFSA in that "he did knowingly engage in a pattern of sexual assault on [the victim], a child under the age of 16, by committing more than one act of [AFSA] or felonious sexual assault or both over a period of two months or more and within a period of five years."

■ The pattern indictment alleged the elements of the offense, as well as facts sufficient to allow the defendant to prepare a defense. *See State v. Hannon*, 151 N.H. 708, 718 (2005). It specified a location for the alleged conduct — Hillsborough, a time period in which it was alleged to have occurred — May 1999 through April 2000, and the identity and age of the victim. It also specified the conduct against which the defendant was

required to defend: a "pattern" of sexual assault, defined as committing more than one act of AFSA or felonious sexual assault or both, upon the same victim, over a period of two months or more and within a period of five years. *See id.*; RSA 632-A:2, III; RSA 632-A:1, I-c. The indictment, therefore, informed the defendant of the offense with which he was charged with sufficient specificity to enable him to prepare for trial. *See Davis*, 149 N.H. at 704.

The defendant argues that the indictment was insufficient because it failed to allege the predicate acts comprising the pattern of sexual assault. Contrary to his assertions, the individual acts of sexual contact underlying the pattern do not constitute elements of the pattern crime, and, therefore, need not be alleged. *See State v. Fortier*, 146 N.H. 784, 791 (2001). Our legislature created RSA 632-A:2, III "to respond to the legitimate concern that many young victims, who have been subject to repeated, numerous incidents of sexual assault over a period of time by the same assailant, are unable to identify discrete acts of molestation." *Id.* at 790. The essential culpable act under the pattern statute, therefore, is the pattern itself, and not the specific assaults that comprise it. *Id.* at 791. Because the indictment here alleged the essential elements of the pattern offense, as well as additional facts, such as the time frame and location in which the assaults allegedly occurred, we hold that the defendant's ability to prepare a defense was not impaired by the indictment's failure to allege more specifically the predicate acts comprising the pattern. We note that there is no evidence in the record submitted on appeal that the defendant requested a bill of particulars.

*III. Sufficiency of the Evidence*

The defendant next asserts that the trial court erred when it denied his motion to dismiss all of the indictments on the ground that the State failed to prove that particular acts of sexual assault occurred during the time frames specified in the indictments. Because the defendant chose to present a case after unsuccessfully moving to dismiss, the issue on appeal is the sufficiency of the evidence and we review the entire trial record to make that determination. *State v. Cunningham*, 159 N.H. 103, 107 (2009). To prevail in his challenge to the sufficiency of the evidence, the defendant had to prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. *State v. Evans*, 150 N.H. 416, 424 (2003).

The defendant argues that the evidence was insufficient to convict him because, on cross-examination, the victim "was unable to recall any of the

time frames of the alleged assaults" or "what details she gave to police investigators." Additionally, he contends that the evidence was insufficient because the victim's "allegations changed over time." He argues, by contrast, that he testified in his own defense "and offered evidence countering every one of the allegations made by the alleged victim."

■ The defendant's arguments go to the victim's credibility and the proper weight to be given to the evidence, questions which were for the jury to resolve. *See State v. Spinale*, 156 N.H. 456, 465 (2007). The jury was free to accept or reject any portion of the victim's testimony in its deliberations. *See State v. Hull*, 149 N.H. 706, 712 (2003). When there is conflicting factual testimony, we defer to the findings of the jury unless no reasonable person could have come to the same conclusion. *Id.*

■ The defendant mistakenly contends that the evidence against him was solely circumstantial, which would require that we examine whether it excluded all rational conclusions except guilt. *See Evans*, 150 N.H. at 424. To the contrary, in this case, the victim presented direct evidence of the assaults. *See State v. Newcomb*, 140 N.H. 72, 80-81 (1995) (defining direct and circumstantial evidence).

## IV. Silly Putty

■ The defendant next contends that the trial court's decision to allow the victim to hold Silly Putty in her hands violated his state and federal constitutional rights to a fair trial. *See* N.H. CONST. pt. I, art. 15; U.S. CONST. amends. VI, XIV. The defendant, however, has not preserved either of these arguments for our review. The general rule in this jurisdiction is that a contemporaneous and specific objection is required to preserve an issue for appellate review. *State v. Winstead*, 150 N.H. 244, 246 (2003). The objection must state explicitly the specific ground of objection. *Id.*

■ In the trial court, the defendant objected on the ground that to allow the victim to hold Silly Putty while testifying would make her appear "more helpless than she might otherwise be evaluated by the jury," and that the State had failed to establish a "compelling need" to allow her to hold the Silly Putty. The defendant never made reference to "due process," "fair trial," "right to confront," or any other phrase that might have alerted the trial court that he intended to raise a constitutional argument. Nor did he ever identify a constitutional provision that was allegedly violated.

This case is unlike others in which we have held that a defendant has preserved a constitutional claim even though he never cited a specific constitutional provision in the trial court. *See State v. Demeritt*, 148 N.H. 435, 439 (2002); *State v. Bruce*, 147 N.H. 37, 40 (2001). For example, in

*Bruce*, the record showed that the defendant had specifically argued that the loss of exculpatory evidence had violated his right to a fair trial. *Bruce*, 147 N.H. at 40. While the defendant never used the phrase "due process," we held that the fact that counsel specifically used the term "exculpatory evidence" and invoked the right to a fair trial was sufficient to alert the trial judge to the legal basis for his argument and to preserve the issue for appeal. *Id.* Similarly, in *Demeritt*, although defense counsel never cited a specific rule or constitutional provision, we held that he sufficiently alerted the trial court that he was raising a due process argument by asking the court to follow the rule set forth in *Doyle v. Ohio*, 426 U.S. 610 (1976), a seminal due process case. *Demeritt*, 148 N.H. at 439. By contrast, in this case, there was nothing to make clear to the trial judge that either due process or the defendant's right to confrontation was the basis of his objection. In light of this record, we hold that he has failed to preserve either a state or a federal constitutional claim. *See State v. Gaffney*, 147 N.H. 550, 554 (2002).

*V. New Hampshire Rule of Evidence 404(b)*

Finally, the defendant argues that the trial court erred by denying his motion *in limine* seeking exclusion of evidence that he owned pornographic movies, dildos and rubber body parts and showed them to the victim. He asserts that New Hampshire Rule of Evidence 404(b) precluded the admission of this evidence.

The admissibility of evidence is a matter within the trial court's broad discretion. *State v. Jenot*, 158 N.H. 181, 184-85 (2008). We review the trial court's admission of evidence pursuant to Rule 404(b) for an unsustainable exercise of discretion. *State v. Pepin*, 156 N.H. 269, 276 (2007). We will reverse the trial court's decision only if it was clearly untenable or unreasonable to the prejudice of the defendant's case. *State v. Beltran*, 153 N.H. 643, 647 (2006).

Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

N.H. R. Ev. 404(b). We have established a three-part test for the admissibility of evidence under Rule 404(b): (1) the evidence must be

relevant for a purpose other than proving the defendant's character or disposition; (2) there must be clear proof that the defendant committed the act; and (3) the probative value of the evidence must not be substantially outweighed by its prejudice to the defendant. *Beltran*, 153 N.H. at 647. The State bears the burden of demonstrating the admissibility of prior bad acts. *Id.*

To meet its burden under the first prong, the State must "articulate the precise chain of reasoning by which the offered evidence will tend to prove or disprove an issue actually in dispute, without relying upon forbidden inferences of predisposition, character, or propensity." *State v. Kim*, 153 N.H. 322, 327 (2006). That chain of reasoning must demonstrate "a sufficient logical connection" between the other acts and the permissible purpose for which the State offers the evidence. *Id.*

Here, evidence that the defendant owned pornography and rubber body parts and showed them to the victim was relevant to demonstrate how he prepared the victim for and desensitized her to the sexual assaults. The victim testified that in the winter of 1999 or 2000, while watching television with the defendant in his bedroom in the Loon Mountain home, he pulled a box from under his bed and showed her rubber body parts, including a penis, breasts and buttocks. He then took off her clothes and had her don these parts, telling her that she "looked nice." After the victim donned the body parts, the defendant told her how babies were made and then turned on the television to watch shows that sometimes involved "real actual people . . . doing something sexual." The defendant told the victim the sexual acts "looked interesting or like fun" and that they "should try [them]." This evidence, objectively viewed, was admissible to demonstrate that the defendant used the rubber body parts and pornography as part of his preparation of the victim to submit to his advances while she was at his Loon Mountain home. *See State v. Castine*, 141 N.H. 300, 304 (1996). The trial court, therefore, did not err in finding the evidence relevant for a purpose other than proving the defendant's character or disposition.

The second prong of the Rule 404(b) test "is satisfied when the [proponent] presents evidence firmly establishing that the defendant, and not some other person, committed the prior bad act." *State v. Lesnick*, 141 N.H. 121, 126 (1996) (quotation omitted). Whether there is clear proof that the defendant committed the prior bad act "is a preliminary determination concerning the admissibility of evidence, and the trial court is not bound by the rules of evidence in making this determination." *Id.*

To establish clear proof, the State made an offer of proof that included: (1) the defendant's admissions that he owned pornography and

rubber body parts, and that the victim may have seen the body parts; and (2) the victim's statements to police that the defendant showed her pornographic films and rubber body parts. This offer of proof was sufficient to meet the second prong of the Rule 404(b) test. *See id.*

Under the third prong of the Rule 404(b) test, evidence of prior bad acts is admissible if the danger of unfair prejudice to the defendant does not substantially outweigh the probative value of the evidence. *Beltran*, 153 N.H. at 649. Evidence is unfairly prejudicial if its primary purpose or effect is to appeal to a jury's sympathies, arouse its sense of horror, or provoke its instinct to punish, or trigger other mainsprings of human action that may cause a jury to base its decision upon something other than the established propositions in the case. *Id.* It is not, however, evidence that is merely detrimental to the defendant because it tends to prove his guilt. *Id.* We accord considerable deference to the trial court's determination in balancing prejudice and probative worth under Rule 404(b). *Id.*

We hold that the trial court sustainably exercised its discretion by ruling that the danger of unfair prejudice from admitting evidence that the defendant showed the victim pornographic films and rubber body parts did not substantially outweigh its probative value. "Although these materials did present a risk of unfair prejudice . . . , the incremental prejudice to the defendant was minimal." *Castine*, 141 N.H. at 306 (citation omitted). The victim did not describe the pornography in any detail and the films were not played for the jury. Moreover, her testimony about the rubber body parts was quite brief. On the other hand, the defendant's display of pornography and rubber body parts to the victim was an integral part of his preparation of the victim to submit to his advances and, as such, was highly probative. Under these circumstances, we hold that the trial court did not err by determining that the probative value of the evidence was not substantially outweighed by its potentially prejudicial nature. *See id.*

To the extent that the defendant contends that even if the evidence were admissible with respect to the Loon Mountain assaults, it was inadmissible with respect to the lake house assaults, he never asked for a limiting instruction nor objected to the trial court's failure to give one. "As such, he cannot now complain of error." *State v. Pelletier*, 149 N.H. 243, 253 (2003); *see State v. Simonds*, 135 N.H. 203, 207 (1991).

*Affirmed.*

BRODERICK, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.