Grafton
No. 2009-145

THE STATE OF NEW HAMPSHIRE

v.

HAROLD OAKES

Argued: September 15, 2010
Opinion Issued: December 7, 2010

*Michael A. Delaney*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Sisti Law Offices*, of Chichester (*Mark L. Sisti* on the brief and orally), for the defendant.

HICKS, J. The defendant, Harold Oakes, appeals his conviction on two counts of aggravated felonious sexual assault and one count of felonious sexual assault. *See* RSA 632-A:2 (2007) (amended 2008); RSA 632-A:3 (2007) (amended 2008). He argues that the Superior Court (*Bornstein*, J.) erred by: (1) denying his motion to dismiss for insufficient evidence; (2) denying his motion to compel depositions; (3) permitting the State to amend the indictments; (4) granting the State's motion to exclude evidence of the victim's prior and subsequent allegations of sexual assault; (5) granting the State's motion to exclude the defendant from testifying about the duration of his interview with the police; and (6) ordering restitution. We affirm.

The record supports the following facts. On November 8, 2007, Sadie Tetreault, a foster care mother, reported to the Vermont Department of Children and Families (DCF) that the defendant had sexually abused her foster daughter, E.N., a child under the age of thirteen. The DCF Investigator reported the allegations to the Enfield Police Department.

The Enfield Police contacted the defendant and interviewed him for one and a half hours on December 1, 2007. On December 6, 2007, the defendant arrived at the police station at 9:00 a.m. to take a polygraph test. After the polygraph, a detective interviewed him from 12:30 p.m. to 3:40 p.m.

On February 15, 2008, the defendant was indicted on two counts of aggravated felonious sexual assault and one count of sexual assault. In July 2008, he filed a motion to compel deposition testimony from both of his interviewing officers and the polygraph examiner in order to develop

evidence that he had given a false confession. The State objected, arguing that the individuals had already provided detailed statements, rendering depositions unnecessary. The trial court denied the defendant's motion, finding that the relevant issues were not complex, the defendant could discover the information by "other means," and the depositions were not "necessary." *See* RSA 517:13, II (2007); *State v. Fernandez*, 152 N.H. 233 (2005).

In August 2008, the State moved to amend the original indictments to expand the time frame of the alleged incidents from January 1, 2005 through December 1, 2005, to January 1, 2005 through September 1, 2006. The State argued that time was not an element of the offense and the amendments were "a matter of form and not substance." The defendant filed no objection. On September 3, 2008, the trial court granted the motion.

In November 2008, the defendant filed a motion to exclude any testimony about the polygraph examination and results, which the trial court granted. In response, the State moved that the defendant be precluded from discussing the time of his arrival at the police station, arguing that it would confuse the jury since the State was not permitted to discuss the polygraph test. Over the defendant's objection, the trial court granted the State's motion, ruling that the defendant could not testify to the time he spent in the police station for the polygraph test if the State didn't "have an opportunity to explain what [the polygraph examiner] was doing there or why."

Before trial, the State filed a motion to exclude evidence of the victim's prior and subsequent sexual assault allegations, after receiving notification from the defendant that he intended to call three witnesses to testify that the victim falsely accused them of sexual assault. The State argued that the evidence was not admissible pursuant to Superior Court Rule 100-A and New Hampshire Rule of Evidence 403. The State further argued that the evidence was irrelevant and would result in a "trial within a trial," because the victim maintained that the assaults did occur. The defendant objected, arguing that: (1) Superior Court Rule 100-A does not apply to "false allegations" of sexual activity; (2) the victim was not unfairly prejudiced under Rule 403 because she cannot "justify deceit"; and (3) the evidence was relevant to the victim's credibility. The trial court granted the State's motion, finding the prior allegations had minimal probative value that was "substantially outweighed by the danger of unfair prejudice — confusion of the issues and misleading the jury."

At the conclusion of the State's case, the defendant orally moved to dismiss the three charges, arguing that the State failed to prove the defendant committed any of the acts "for the purpose of sexual arousal or gratification," an element of RSA 632-A:2, II (2007). He further argued that

the State failed to satisfy its burden on the remaining charge brought pursuant to RSA 632-A:3. The trial court, construing the evidence in the light most favorable to the State, ruled that the State had "produced sufficient evidence from which a reasonable jury could infer or find guilt," and denied the defendant's motion.

On the last day of trial, the State filed a motion *in limine* to prevent the defendant from testifying to the time of his arrival at the police station for his second interview. The defendant had referenced the time period in his opening statement and in the testimony of two defense witnesses. The State argued that the ruling on the defendant's previous motion *in limine* excluded all references to the polygraph, including the length of time that the defendant was in the station to take it. The defendant did not object, stating, "No, I believe that's all decided and agreed to, Your Honor." The trial court granted the State's motion, finding it consistent with its previous ruling on the motion to exclude the polygraph testimony, where the court had found that "the evidence regarding the time at which [the polygraph examiner] arrived" was inadmissible.

The jury convicted the defendant on all three charges. As part of its sentencing recommendation, the State requested restitution to pay for any future counseling for the victim. Because the victim had not yet incurred medical bills, the State recommended an amount not to exceed $10,000. The State indicated that once a bill was submitted from the victim, the defendant or the department of corrections could request a hearing to review the submission. The trial court imposed restitution consistent with the State's request. The defendant objected, arguing that it was an unconstitutional indefinite sentence without any basis in the record. The trial court found that "in the context of this particular sentence," it was not unconstitutional because the victim was likely to incur counseling costs and the sentence imposed a ceiling on those costs. Additionally, the trial court found that the defendant could "challenge the amount of restitution if he disputes the reasonableness of the bills."

*I. Sufficiency of the Evidence*

On appeal, the defendant argues that the evidence was insufficient to support his convictions. The State counters that the victim's testimony describing the assaults, and the defendant's written and oral statements to police, were sufficient to establish the elements of the three charges.

In challenging the sufficiency of the evidence, the defendant must "prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt." *State v. Ericson*, 159 N.H. 379, 385 (2009).

We will consider the entire trial record because the defendant chose to present a case after unsuccessfully moving to dismiss the indictments. *Id.*

At trial, the victim testified that the defendant touched her several times on her vagina and her buttocks. She testified that the defendant complimented her body, and that he threatened her and her family if she told anyone about what had occurred. She further testified that the defendant digitally penetrated her, and she marked a plastic glove indicating the depth of penetration. The officer who conducted the first interview with the defendant testified that he admitted to being alone with the victim "[f]our times." In response to the officer's question whether he ever thought about "touching a kid," the defendant stated, "everybody thinks about it."

The officer who conducted the second interview of the defendant testified that he admitted to "tickle wrestling" with the victim and purposely inserting his fingertips into her, but stopped because "he knew it was wrong." He read aloud the defendant's written statement that "[o]nly tips of a finger was [*sic*] inserted when I touched her." He also read aloud an apology letter that the defendant wrote to the victim that stated, "I am sorry for the incident that occurred, but it was an accident and I would like to apologize to you. I hope you can forgive me about [*sic*] this."

The defendant testified that any touching of the victim that may have occurred was accidental. He testified that the second interview was "very aggressive," and that he could not remember writing a statement because his "brain was fried" by the end of the interview. He testified that he was "browbeated" [*sic*] during the interview and that his written statement used the officer's words, not his own words.

■ The evaluation of witness credibility and the weight given to witnesses' testimony "were issues for the jury to resolve." *State v. Spinale*, 156 N.H. 456, 465 (2007). The jury heard contradictory testimony from the witnesses, but found the defendant guilty on all three counts. "The jury was free to accept or reject any portion of the victim's testimony in its deliberations. When there is conflicting factual testimony, we defer to the findings of the jury unless no reasonable person could have come to the same conclusion." *Ericson*, 159 N.H. at 386 (citation omitted).

■ In viewing the evidence in the light most favorable to the State, the testimony of the victim and the police officers provided more than sufficient evidence for a rational trier of fact to find guilt beyond a reasonable doubt on all three counts. In so holding, we reject the defendant's argument that the indictments "should have been merged for sentencing" because the evidence was "insufficient to prove multiple acts." The trial court did not err in denying the defendant's motion to dismiss.

*II. Motion to Compel Depositions*

The defendant argues that depositions of the interviewing police officers and polygraph examiner were necessary to support his claim that he made a false and/or involuntary confession. He argues that there was no other way to determine the "methodology used by the police in their interrogation of him." The State argues that the interview techniques used by the officers were "within the defendant's personal knowledge." The State noted that the defendant "could have moved to exclude his confession as involuntary and questioned the same witnesses at an evidentiary hearing." The trial court, relying on RSA 517:13, II and *Fernandez*, denied the request, finding that the issues were not "complex" and the depositions were not "necessary," because the defendant could discover the information by "other means." *See Fernandez*, 152 N.H. at 236-37; RSA 517:13, II.

We will evaluate the trial court's denial of the defendant's motion under the unsustainable exercise of discretion standard. *See Fernandez*, 152 N.H. at 236. "To prevail, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case." *Id.*

Under RSA 517:13, II, the trial court has the discretion to compel depositions of a witness in a criminal case where the moving party shows by "a preponderance of the evidence that such deposition is necessary." RSA 517:13, II. A deposition is necessary "[t]o ensure a fair trial, avoid surprise or for other good cause shown." RSA 517:13, II(b). "In determining the necessity, the court shall consider the complexity of the issues involved, other opportunities or information available to discover the information sought by the deposition, and any other special or exceptional circumstances which may exist." *Id.*

■ In *Fernandez*, we upheld the trial court's denial of the defendant's request for depositions because the defendant had "ample information to prepare his defense." *Fernandez*, 152 N.H. at 236 (quotation omitted). The defendant attempts to distinguish *Fernandez*, arguing that here the partial transcript and officers' reports were insufficient. However, as the trial court found, the defendant could have challenged the voluntariness of his confession and moved to suppress it. At the hearing, the defendant would have had an opportunity to cross-examine both of the officers and the polygraph examiner. *See, e.g., State v. Hall*, 148 N.H. 671, 672 (2002) (explaining standard for evaluating voluntariness of a confession after suppression hearing). Here, as in *Fernandez*, "the trial court weighed the statutory factors and properly ruled that the defendant had not met his burden of establishing necessity." *Fernandez*, 152 N.H. at 236 (quotation omitted).

In his brief, the defendant makes passing reference to "Part I, Article 15 of the New Hampshire Constitution and the Fifth, Sixth and Fourteenth Amendments to the United States Constitution." "Because the defendant has not developed his constitutional arguments, we decline to address them." *State v. Lott*, 152 N.H. 436, 443 (2005); *see State v. Chick*, 141 N.H. 503, 504 (1996) (defendant waived constitutional claims by failing to elaborate on them.).

### III. Amendments to the Indictments

The defendant argues that, although he did not object to the amendments of his indictments below, the trial court committed plain error in granting the State's motion. He argues that the amendments were "a substantive change in the charge" and not merely "a change in the form." In response, the State argues that time was not an element of any of the charged offenses; thus, the amendments were a change in form, not substance. The State further argues that the change was not prejudicial because the defendant did not assert "an alibi defense" or other "defense based on lack of opportunity."

■ The plain error rule allows us to exercise our discretion to correct errors not raised in the trial court that affect "substantial rights." SUP. CT. R. 16-A. To find plain error: "(1) there must be error; (2) the error must be plain[;] (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings." *State v. Hancock*, 156 N.H. 301, 303 (2007) (quotation omitted). We find error under this rule "sparingly," and only to prevent "a miscarriage of justice." *State v. Matey*, 153 N.H. 263, 266 (2006) (quotations omitted).

■ Part I, Article 15 of the State Constitution provides that "no subject shall be held to answer for any crime, or offense, until the same is fully and plainly, substantially and formally, described to him." N.H. CONST. pt. I, art. 15. A defendant "has a right to rely upon the information contained in an indictment in preparing his defense, and a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." *State v. Erickson*, 129 N.H. 515, 519 (1987) (quotation omitted). A trial court "may amend indictments in form, but not in substance." *State v. Bathalon*, 146 N.H. 485, 489 (2001); *see* RSA 601:8 (2001). Amendments in form are permissible because "they do not jeopardize the right to be tried only on charges that have been passed on by a grand jury." *State v. Elliott*, 133 N.H. 759, 764 (1990) (quotation omitted). Some amendments are not easily classified as affecting the form or the substance of the indictment. *Id.*

[B]etween these two extremes is the amendment that does not alter the crime charged in an indictment, but changes an allegation in the indictment that has the effect of specifying and circumscribing the scope of the crime alleged; for instance, an allegation of how the crime was committed. Such an allegation is part of the indictment's substance, but it is not as protected from trial court amendment as an element of the offense charged.

*Id.* (quotation and citation omitted). The test for whether a changed allegation "causes an impermissible amendment of the indictment is whether the change prejudices the defendant either in his ability to understand properly the charges against him or in his ability to prepare his defense." *Id.* (quotation omitted).

 Here, the State's amendment of the indictments was a change in the allegation, which had the "effect of specifying and circumscribing the scope of the crime alleged." *Id.* (quotation omitted). Thus, the defendant must prove that the change prejudiced his ability to "understand properly the charges" or "prepare his defense." *Id.* (quotation omitted). The defendant argues that he prepared a defense only to any alleged assaults occurring between January 1, 2005 and December 1, 2005. We find no merit to this argument. During his interview at the police station, the defendant admitted to being alone with the victim on four occasions. At trial the defendant testified that he never touched the victim, and any touching that may have occurred was accidental. This argument does not rely upon the originally specified time frame. The defendant has never asserted an alibi defense or lack of access to the victim; nor has he established any prejudice to his defense due to the change in the time frame of the indictments.

Further, the trial court granted the State's motion on September 3, 2008. The defendant's trial was held in mid-November 2008. The defendant had sufficient time to understand the charges and prepare any additional defenses before trial. *See id.* The trial court committed no error, much less plain error, in permitting amendment of the indictments.

*IV. Evidence of the Victim's Prior and Subsequent Allegations of Assault*

Before trial, the defendant sought to introduce testimony from three witnesses that the victim had made false allegations of sexual misconduct against others, both before and after the allegations against the defendant. The defendant argues that the trial court's order granting the State's motion to exclude this evidence denied the defendant "the opportunity to inquire into and cross-examine the truthfulness of his accuser." The

defendant argues that under a *Kornbrekke* analysis, the victim's "history of making false sexual abuse allegations" was probative. *See State v. Kornbrekke*, 156 N.H. 821 (2008). The State argues that under Rule 608(b) of the New Hampshire Rules of Evidence, the inquiry on cross-examination is only admissible if it is "probative of truthfulness or untruthfulness." The State argues that for none of the witnesses "can it be said that the accusation was shown to be false, even by a preponderance of the evidence." In its brief, the State seeks to distinguish *Kornbrekke*.

We afford the trial courts "broad discretion to determine the scope of cross-examination or the admissibility of evidence." *Id.* at 823. We review challenges to a trial court's evidentiary rulings under our unsustainable exercise of discretion standard and reverse only if the rulings are clearly untenable or unreasonable to the prejudice of a party's case. *State v. Forbes*, 157 N.H. 570, 572 (2008).

Under New Hampshire Rule of Evidence 608(b):

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule § 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness . . . concerning the witness' character for truthfulness or untruthfulness . . . .

This Rule is limited by New Hampshire Rule of Evidence 403, which provides, in pertinent part: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."

*A. Extrinsic Evidence*

As an initial matter, the defendant's assertion that the three witnesses would have testified at trial that the victim "had lied about allegations of sexual misconduct" is immaterial because the defendant relies only upon the *Kornbrekke* factors in his brief. (Quotation omitted). *Kornbrekke* applies exclusively to cross-examination of a victim. *Kornbrekke*, 156 N.H. at 828. Under Rule 608(b), extrinsic evidence presents a separate issue. *See* N.H. R. Ev. 608(b). Typically, extrinsic evidence is not permitted to attack the credibility of the victim. *Id.* "[D]efense counsel may cross-examine a State witness about conduct that is probative of the witness's character for truthfulness or untruthfulness, but must take the answer the witness gives on cross-examination." *State v. Kelly*, 160 N.H. 190, 202 (2010) (quotation omitted).

■ With other allegations of sexual assault, we have created an exception to this bar on extrinsic evidence "where the allegations are similar, and the proffered evidence is highly probative of the material issue of the complainant's motives." *State v. Ellsworth*, 142 N.H. 710, 719 (1998). Thus, the defendant is permitted to introduce extrinsic evidence of the victim's prior allegations where "the prior allegations were demonstrably false, which we interpret to mean clearly and convincingly untrue." *State v. Brum*, 155 N.H. 408, 414 (2007) (quotations omitted).

The defendant relies solely upon the *Kornbrekke* factors in his brief, thereby electing not to rely upon *Ellsworth* or the Rule 608(b) requirements for the admission of extrinsic evidence. *See Ellsworth*, 142 N.H. at 719; N.H. R. Ev. 608(b). Thus, we decline to address the trial court's exclusion of extrinsic evidence of the victim's allegedly false allegations through the three witnesses' testimony.

### B. Cross-Examination

■ A trial court must also determine whether the evidence is admissible during cross-examination of the victim under Rules 403 and 608(b). *Kelly*, 160 N.H. at 200. In *Kornbrekke*, we reiterated the factors that the trial court should consider in determining the "interplay between Rules 403 and 608" to determine the "degree of probative value" of the evidence:

> (1) whether the testimony of the witness is crucial or unimportant; (2) the extent to which the evidence is probative of truthfulness or untruthfulness; (3) the extent to which the evidence is also probative of other relevant matters: (4) the extent to which the act of untruthfulness is connected to the case; (5) the extent to which the circumstances surrounding the specific instances of conduct are similar to the circumstances surrounding the giving of the witness's testimony; (6) the nearness or remoteness in time of the specific instances to trial; (7) the likelihood that the alleged specific-instances conduct in fact occurred; (8) the extent to which specific-instances evidence is cumulative or unnecessary in light of other evidence already received on credibility; and (9) whether specific-instances evidence is needed to rebut other evidence concerning credibility.

*Kornbrekke*, 156 N.H. at 825.

In their written and oral motions to the trial court, both parties relied solely upon the Rules of Evidence and did not address the *Kornbrekke* factors. Thus, the trial court relied solely on an analysis of Rule 403 in determining that the "probative value of those allegations is minimal at best and that any probative value they may have is substantially outweighed by

the danger of unfair prejudice — confusion of the issues and misleading the jury." *See* N.H. R. Ev. 403. We will review the trial court's decision to determine whether its ruling reflects analysis of the factors we reiterated in *Kornbrekke* for determining the admissibility of a victim's prior false allegations during the victim's cross-examination. *See Kornbrekke*, 156 N.H. at 825.

In *Kornbrekke*, the victim had previously accused a man of sexual assault and later recanted her statement in writing. *Id.* at 823. Here, the victim made accusations of sexual assault against three other individuals, one prior and two subsequent to the allegations in this case. DCF deemed the prior instance substantiated. Although the perpetrator agreed to attend sex offender counseling during which he admitted to the assaults, he was never charged. DCF deemed the two subsequent allegations unsubstantiated for lack of evidence, but not falsity.

Unlike *Kornbrekke* where the victim recanted her statement in writing, *id.* at 823, the victim here maintains that the assaults did occur. We stated in *Kornbrekke*, "The likelihood . . . the complainant in fact made a prior false accusation . . . is a critical factor to the probative value analysis in this case. If no such false accusation was made, then the cross-examination is not probative of the complainant's character for truthfulness or untruthfulness." *Id.* at 826.

■ "The defendant need not prove that a prior accusation was demonstrably false in order to cross-examine the complainant about it; rather, the trial court must assess whether the prior accusation is probative of truthfulness or untruthfulness and otherwise admissible." *Id.* at 824. In *Brum*, the fact "[t]hat no charges related to the prior incident were filed did not transform the account into a false one, and the trial court could have reasonably found that the account was not probative of the complainant's truthfulness or untruthfulness." *Id.* at 827; *see Brum*, 155 N.H. at 413-14.

■ A "critical factor" in the *Kornbrekke* analysis is whether the other allegations of sexual assault were false; if they were not false, the evidence is not relevant to show "untruthfulness" of the victim on cross-examination. *Kornbrekke*, 156 N.H. at 826; *see* N.H. R. Ev. 608(b). Here, the "critical factor" is missing. *Id.* The trial court did not unsustainably exercise its discretion when it excluded evidence of the victim's prior and subsequent allegations of sexual assault under Rule 403, where there was a substantiated finding of abuse in one instance and no evidence to show that any of the allegations was, in fact, false. *See* N.H. R. Ev. 403. While the trial court should have specifically applied the *Kornbrekke* factors, its rulings under Rule 403 were nevertheless consistent with them. *See Kornbrekke*, 156 N.H. at 825.

## V. Defendant's Testimony

The defendant argues that the trial court erred in granting the State's motions that prevented him from testifying to the length of time that he spent at the police station during his second interview and, thereby, misled the jury. He contends that the trial court denied him the opportunity to show that his confession was involuntary, a question for the jury to decide. The State responds that the defendant's motion to exclude testimony about the polygraph examination prevented him from using the time spent conducting the polygraph to his advantage at trial. The State argues that it would unfairly mislead the jury to suggest that time spent conducting the defendant's polygraph examination was a part of the interrogation.

We hold that the trial court sustainably exercised its discretion by excluding testimony of the time the defendant arrived at the police station. Rule 403 provides that evidence may be excluded from trial "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." N.H. R. Ev. 403. "We accord the trial court considerable deference in determining the admissibility of evidence," and we review challenges to a trial court's evidentiary rulings under our unsustainable exercise of discretion standard. *State v. Giddens*, 155 N.H. 175, 179 (2007). We will reverse the trial court only if the rulings are clearly untenable or unreasonable to the prejudice of a party's case. *Forbes*, 157 N.H. at 572.

The trial court ruled that the defendant could not testify to the time he spent in the police station for the polygraph test if the State could not explain why the defendant was present in the station. If the defendant were to have testified that he spent the morning at the police station with no reference to the polygraph exam, the jury would have been misled by reasonably concluding that the defendant had been interrogated for an additional three hours.

■ Under the "specific contradiction" branch of the opening-the-door doctrine, the State would have been entitled "to introduce previously suppressed or otherwise inadmissible evidence to counter the misleading advantage" created by the defendant. *State v. Wamala*, 158 N.H. 583, 589 (2009).

> When a defendant leaves the trier of fact with a false or misleading impression, the State is entitled to counter with evidence to refute the impression created by the defendant and cure the misleading advantage. This rule prevents a defendant from successfully excluding inadmissible evidence favorable to the

State and then selectively introducing pieces of this evidence for his own advantage, without allowing the prosecution to place the evidence in its proper context.

*State v. Carlson*, 146 N.H. 52, 56 (2001) (quotation omitted).

We note that other state and federal jurisdictions allow the prosecutor to introduce testimony about a polygraph examination to rebut the defendant's testimony that his confession was coerced or involuntary. *See United States v. Allard*, 464 F.3d 529, 534 (5th Cir. 2006) ("[A] polygraph examination is admissible where it is not offered to prove the truth of the polygraph result, but instead is offered for a limited purpose such as rebutting a defendant's assertion that his confession was coerced."); *United States v. Johnson*, 816 F.2d 918, 923 (3d Cir. 1987) ("[E]vidence concerning a polygraph examination may be introduced to rebut an assertion of coercion of a confession . . . ."); *United States v. Kampiles*, 609 F.2d 1233, 1244 (7th Cir. 1979) ("It would have been unfair to allow defendant to present his account of his admissions, based upon the alleged threats of [the Agent], without allowing the Government to demonstrate the extent to which failure of the polygraph precipitated the confession."), *cert. denied*, 446 U.S. 954 (1980); *People v. Jefferson*, 705 N.E.2d 56, 61 (Ill. 1998) ("[T]he trial judge in this case correctly permitted the State to rebut the defendant's claim of coercion with polygraph evidence."); *State v. Baldwin*, 808 S.W.2d 384, 392 (Mo. Ct. App. 1991) ("[T]estimony regarding the polygraph was admissible to rebut the evidence elicited by the defendant about the duration and circumstances of her interrogation . . . ."); *State v. Hart*, 791 P.2d 125, 127 (Or. 1990) (*en banc*) ("[I]f a defendant chooses to object to the admission in evidence of a confession . . . [as involuntary] because of a polygraph examination, the state in rebuttal is not precluded from offering the statements or that they originated in a polygraph examination.").

 Having persuaded the trial court to exclude testimony about the polygraph examination, the defendant was not entitled to present evidence that would have misled the jury absent the excluded evidence. Accordingly, we cannot say that the trial court unsustainably exercised its discretion in granting the State's motions to exclude the defendant's testimony about the time of his arrival at the police station.

*VI. Jury Instruction*

 During oral argument, the defendant for the first time challenged the trial court's jury instruction on the voluntariness of his confession. The instruction provided that the jury should consider "the length of time that the [d]efendant was questioned" as a consideration of the voluntariness of the confession. The defendant did not object to the jury instruction at trial,

nor did he raise the instruction as an issue in his notice of appeal. Therefore, we decline to address this argument and deem it waived. *See LaMontagne Builders v. Bowman Brook Purchase Group*, 150 N.H. 270, 276 (2003).

*VII. Restitution*

■ Finally, the defendant argues that the trial court erred when it ordered him to make restitution to the victim in an amount not to exceed $10,000 for any counseling costs the victim may incur in the future as a result of the defendant's crime. He contends that the sentence to pay restitution is too indefinite. To the extent that the defendant intends to raise this argument under the State Constitution, we conclude that he has failed to preserve it for our review. To preserve a state constitutional claim, the defendant must: (1) raise it in the trial court; and (2) specifically invoke a provision of the State Constitution in his brief. *State v. Dellorfano*, 128 N.H. 628, 632 (1986). In the trial court, the defendant argued that this sentence was unconstitutional under *State v. Rau*, 129 N.H. 126 (1987). Even if we assume, without deciding, that referring to *Rau* was sufficient to raise the issue in the trial court, the defendant has failed to specifically invoke a provision of the State Constitution in his brief. *Dellorfano*, 128 N.H. at 632; *see State v. Reynolds*, 124 N.H. 428, 432 (1984) (although defendant's brief referred extensively to state case law, the defendant did not cite a New Hampshire constitutional provision and thus did not raise a state constitutional issue). Accordingly, we will not perform a state constitutional analysis. *Dellorfano*, 128 N.H. at 633.

■ We also decline to perform a federal constitutional analysis. In the trial court, the defendant did not refer to the Federal Constitution. Thus, he has failed to demonstrate that he preserved a federal constitutional argument for our review. *See State v. DeCato*, 156 N.H. 570, 573 (2007).

Therefore, we analyze only whether the trial court's restitution order complies with New Hampshire statutory law. RSA 651:61-a, I (2007) states, in pertinent part: "The legislature finds and declares that the victims of crimes often suffer losses through no fault of their own . . . . It is the purpose of this act to establish a presumption that the victim will be compensated by the offender who is responsible for the loss." RSA 651:61-a, II (2007) explains: "The legislature does not intend that restitution be contingent upon an offender's current ability to pay or upon the availability of other compensation. The legislature intends that the court increase, to the maximum extent feasible, the number of instances in which victims receive restitution." RSA 651:62, V (2007) defines restitution, in part, as "money or service provided by the offender to compensate a victim for

economic loss." RSA 651:62, III (2007) explains that economic loss "means out-of-pocket losses or other expenses incurred as a direct result of a criminal offense." Pursuant to RSA 651:63, I (Supp. 2009), "[a]ny offender may be sentenced to make restitution in an amount determined by the court." If a court chooses not to order restitution, it must state its reasons therefore. RSA 651:63, I. "Restitution may be ordered regardless of the offender's ability to pay and regardless of the availability of other compensation"; however, it "is not intended to compensate the victim more than once for the same injury." *Id.*

██ "Determining the appropriate restitution amount is within the discretion of the trial court. If the factual basis for restitution is disputed, however, the State must prove by a preponderance of the evidence that the loss or damage is causally connected to the offense and bears a significant relationship to the offense." *State v. Eno*, 143 N.H. 465, 470 (1999) (citation and quotation omitted).

██ We conclude that the trial court's order requiring the defendant to pay restitution to the victim in the future up to a maximum of $10,000 for counseling costs occasioned by his crime does not violate the applicable statutes. Nothing in these statutes precludes a trial court from ordering a defendant to pay restitution for future economic losses caused by his or her crime. Accordingly, the trial court did not err by ordering the defendant to pay restitution to the victim in the future for counseling costs she incurs as a result of his crime.

*Affirmed.*

DALIANIS, DUGGAN and CONBOY, JJ., concurred.