Rockingham
No. 2007-159

THE STATE OF NEW HAMPSHIRE

v.

PETER MUNOZ

Argued: February 21, 2008
Opinion Issued: April 18, 2008

144

*Kelly A. Ayotte*, attorney general (*Thomas E. Bocian*, attorney, on the brief and orally), for the State.

*Desfosses Law Firm*, of Portsmouth (*Philip Desfosses* on the brief and orally), and *Samdperil & Welsh, PLLC*, of Exeter (*Richard E. Samdperil* on the brief), for the defendant.

GALWAY, J. The defendant, Peter Munoz, appeals his conviction following a jury trial for attempted burglary, *see* RSA 635:1 (2007); RSA 629:1 (2007), arguing that the trial court erred in denying his motions to quash and to dismiss, and in permitting certain testimony. We affirm.

The record discloses the following facts. On May 29, 2003, Jennifer Durbin was alone in her second-floor apartment at the Fairways apartment complex in Derry when she heard a noise from her living room. When she went to investigate, she saw a man standing on her balcony attempting to pry open her sliding-glass door with an orange-handled screwdriver. When the man noticed her, he pulled the hood of his sweatshirt over his head, jumped off the balcony and departed. Durbin called the police. Upon their arrival, the police obtained a description of the man, and a latent fingerprint from the exterior handle of the balcony door.

Later that morning, an anonymous female caller with a Hispanic accent telephoned the Derry Police Department and spoke with Officer Barry Charewicz. She informed him that she had the name of someone the police "should be looking at for the Fairways attempted burglary." Despite being asked, the caller would not give her name, but did provide the defendant's name, age and physical description. The caller also stated that she and the defendant knew each other because they were from the same country. Shortly before trial, the caller was identified as the defendant's wife, Naomi Pena.

Based upon the information received from the then-anonymous tip, the police contacted the United States Immigration and Naturalization Service

(INS) (now known as the United States Customs and Immigration Services) and obtained a fingerprint card for the defendant. It was later determined that the fingerprint from the balcony matched one on that card.

Approximately one month after finding the man on her balcony, Durbin and her husband moved out of their apartment. Three or four days prior to moving, the Durbins held a furniture sale at their apartment. Durbin testified that she recalled seeing the defendant and his wife at the sale, and that she sold them some furniture. Durbin testified that she was startled by the defendant's presence at the sale because she believed, though was not certain, that she recognized him as the man from her balcony. Durbin also testified that even at the time of trial she could not be certain if the defendant was, in fact, the man on her balcony.

In July 2003, with the defendant's wife acting as an interpreter, the police spoke with the defendant at his apartment. According to the interviewing officer's testimony, after being told that his fingerprint was found on the balcony, the defendant stated that he was not in Derry but in Boston on May 29. Later in the interview, the defendant stated that he was in Colombia on that day, but then stated that he had actually returned from Colombia before May 29. According to the officer, the defendant explained that his fingerprint might have been found in Durbin's apartment because he had been there to buy furniture, or because he had visited a prior tenant there, but he could not recall the tenant's last name. At the conclusion of the interview, the police received the defendant's wife's permission to search her two cars and a slightly bent, orange-handled screwdriver was found in one.

The defendant was subsequently indicted for attempted burglary. Prior to trial, he moved to quash the indictment, arguing that it was defective. The Trial Court (*Morrill*, J.) denied the motion. He renewed his argument in a motion to dismiss at the close of the State's case, which the Trial Court (*Coffey*, J.) also denied. Additionally, before trial the defendant moved to preclude the State from referring to the anonymous telephone call or from disclosing its contents. The Trial Court (*Coffey*, J.), however, admitted testimony about the call, subject to certain limitations. The defendant appealed these rulings following his conviction for attempted burglary.

On appeal the defendant first contends, under Part I, Article 15 of the New Hampshire Constitution, that the trial court erred in denying his motions to quash and dismiss because the indictment was inadequate. According to the defendant, because burglary is essentially an attempt to enter a building to commit some other offense, for a burglary indictment to be adequate, it must allege which crime the perpetrator would have committed in furtherance of the burglary. The defendant contends that because a burglary indictment must allege the crime to be committed, so

must an indictment for attempted burglary. Because the indictment here did not allege what other offense would be committed upon entry, it was defective.

■■ "A person is guilty of an attempt to commit a crime if, with a purpose that a crime be committed, he does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step toward the commission of the crime." RSA 629:1, I. Attempt is an inchoate crime that is considered a substantive offense in and of itself. *State v. Johnson*, 144 N.H. 175, 178 (1999). To be constitutionally adequate, an indictment charging an attempt must allege both an intent to commit a crime and an overt act in furtherance of the crime. *Id.* at 177, 178. However, while the attempt statute requires the State to identify the intended offense, it does not require the State to plead and prove the elements of the intended offense and it is ordinarily sufficient to state the intended offense generally. *Id.* at 178. "Since an attempted crime is by definition a crime not completed, the State could not plead, factually identify, and prove the elements of the intended offense as if it had been carried out." *Id.*

■■ Here, the indictment alleges that the defendant had the requisite intent and alleges an overt act in furtherance of the crime as well as the crime attempted, *i.e.*, burglary. Therefore, it is constitutionally adequate. *Id.* at 177, 178. Charging the defendant with attempted burglary does not require the State to specify the offense the defendant would have committed in furtherance of the burglary. Requiring the State to comply with the defendant's argument would require it to plead and prove the elements of the crime attempted, a result contrary to *Johnson*. Moreover, such a requirement would force the State to prove more than is required by the attempt statute, *see* RSA 629:1, I. The indictment meets the requirements for an adequate attempt charge and it describes the offense with sufficient specificity to allow the defendant to prepare for trial. *Id.* at 177.

The defendant argues that not requiring the State to identify the crime to be committed would leave the jury to speculate about what crime would have been committed. Permitting such speculation, according to the defendant, is impermissible because the jury could convict the defendant without reaching a unanimous decision regarding the crime that would have been committed. Unanimity, however, is required only as to the elements of the crime charged. *See State v. Greene*, 137 N.H. 126, 128 (1993) ("The New Hampshire Criminal Code requires jury unanimity with respect to the presence of the elements of offenses in criminal cases as charged."). Here, the crime charged is attempted burglary, and unanimity is needed only as to its elements. What crime or offense the defendant would have committed

in furtherance of the burglary is not an element of attempt, and, therefore, does not require unanimity. Accordingly, we conclude that the trial court did not err in denying the defendant's motions to quash and dismiss.

Next, the defendant contends that in admitting the officer's testimony regarding the substance of his conversation with the anonymous caller, the trial court violated his right of confrontation under both the State and Federal Constitutions. *See* N.H. CONST., pt. I, art. 15; U.S. CONST. amends. VI, XIV. Before trial, the defendant sought to exclude testimony regarding the anonymous call, but the trial court nevertheless permitted the State to introduce portions of the call through Charewicz, which the State did. The defendant argues that admitting Charewicz's testimony was error.

■ We address first the defendant's argument under Part I, Article 15 of the New Hampshire Constitution, citing federal opinions for guidance only. *See State v. Miller*, 155 N.H. 246, 253 (2007). The defendant contends that his rights under the State Constitution were violated because admitting Charewicz's testimony was contrary to *Crawford v. Washington*, 541 U.S. 36 (2004). We have not, however, adopted the *Crawford* analysis as applicable in this State, *see State v. Ayer*, 154 N.H. 500, 511 (2006), *cert. denied*, 128 S. Ct. 63 (2007), and the defendant does not argue that we should do so here. Moreover, the defendant offers no argument under any other standard regarding the violation of his rights under the State Constitution. *See id.* (noting that we have traditionally applied the analysis in *Ohio v. Roberts*, 448 U.S. 56, 66 (1980), to Confrontation Clause challenges under the State Constitution). Accordingly, we conclude that the defendant does not prevail on his claim under the New Hampshire Constitution.

In support of his claim under the Federal Constitution, the defendant relies principally upon *Crawford*, wherein the United States Supreme Court held that testimonial hearsay is inadmissible under the Federal Confrontation Clause unless the declarant is unavailable at trial and the defendant had a prior opportunity to cross-examine him or her. *Crawford*, 541 U.S. at 68. As the First Circuit has stated:

> ■ *Crawford* holds that a declarant's "testimonial" out-of-court statement is not admissible under the Confrontation Clause unless (1) the declarant testifies, or (2) the defendant had a prior opportunity for cross-examination and the declarant is unavailable, or (3) the evidence is admitted for purposes other than establishing the truth of the matter asserted.

*United States v. Maher*, 454 F.3d 13, 19-20 (1st Cir. 2006) (citations omitted), *cert. denied*, 127 S. Ct. 568 (2007); *see also Ayer*, 154 N.H. at 505.

Here, it is undisputed that Pena did not testify and that the defendant never had an opportunity to cross-examine her. Accordingly, resolution of the instant matter requires us to determine whether the evidence was admitted for purposes other than establishing the truth of the matter asserted.

"The Supreme Court has held in several instances that nonhearsay statements do not implicate the Confrontation Clause." *United States v. Walter*, 434 F.3d 30, 34 (1st Cir.), *cert. denied*, 547 U.S. 1199 (2006). Moreover, "[i]n several cases, [the First Circuit] has held that when statements are offered only to provide context and not for the truth of the matter asserted, those statements are not hearsay." *Id.* The " 'context' rationale," however, does not provide unlimited discretion to permit police testimony; what is most important is the precise nature of the context provided. *Maher*, 454 F.3d at 22. Here, the State argues that Pena's statements were not offered for the truth of the matter asserted, *i.e.*, that the defendant attempted to burglarize Durbin's apartment, but to provide context for the investigation that followed. Indeed, the trial court ruled that Charewicz's testimony about the caller's statements was admissible to show the state of mind of the police, and the basis for their contact with INS. The defendant, however, contends that the testimony was offered to show that he had committed the crime.

As noted previously, before trial, the defendant sought to exclude all references to the telephonic tip and its contents. The State countered that the testimony regarding the tip would not be offered for its truth, but only to show why the investigation "took the turn that it did." The defendant then offered to permit the State to say that "a police investigation led us to suspect [the defendant]." This compromise was rejected by the trial court because it believed such a statement would imply that the police were aware of past criminal activity by the defendant, and would thus unfairly prejudice him. In the end, the trial court permitted the prosecution to admit Charewicz's testimony to the extent it would relate that the tipster said the defendant was one the police ought to "look at" in the Fairways attempted burglary, and that the caller gave a physical description of the defendant and knew the defendant because they were from the same country. The trial court stated that this testimony would be admitted in:

> the manner in which we would similarly put in any kind of anonymous tip that's called in, that it's being offered to show the state of mind of the police and it's on that basis, that they predicated their next step, which was the fingerprint analysis. They had somewhere to go for that.

Thus, the trial court ruled that the testimony would not be admitted for its truth, but only to show why the police contacted INS and began investigating the defendant.

In his opening statement, the prosecutor relayed to the jury the contents of the call consistent with the trial court's ruling, and informed them that the description provided by the caller was the same as that given by Durbin. The prosecutor then informed the jury that based upon the information provided in the call, the police contacted INS. Later, the State introduced Charewicz's testimony as described previously, using leading questions so as to tailor the testimony to the trial court's pretrial ruling. Finally, in its closing, the State again related to the jury that the caller had given the police the defendant's name and physical description and had stated that she and the defendant were from the same country, and that as a result of this call the police contacted INS.

 "It is well settled that where a conversation is relevant irrespective of the truth of what is said, the hearsay rule does not operate to exclude the testimony." *State v. Martineau*, 116 N.H. 797, 798 (1976). Here, the trial court ruled that the testimony, as it has been described, would not be admitted for its truth, but only to show that a tip was given and that the police acted upon the information received. Thus, the trial court recognized that it was relevant that the conversation occurred and that it prompted the police to contact INS, regardless of whether the information in the call was, in fact, true. Accordingly, testimony about the call was admissible for a non-hearsay purpose. While the trial court did not issue an instruction to the jury informing them of the limited purpose for the testimony, the trial court had no obligation to do so absent a request therefore, or an objection to the lack thereof, by the defendant. *See State v. Pelletier*, 149 N.H. 243, 253 (2003).

 The defendant contends that "if the statement was being admitted to show the police officers' state of mind, . . . then there was no need to include the caller's physical description of the defendant or her statement that [the defendant] was the one who committed the attempted break-in." The trial court, however, ruled that this information was permissible to show why the police contacted INS, as opposed to continuing their investigation in some other way. As argued by the prosecutor, "It has to make sense. Why would they go to INS?" In other contexts, we have noted that in assessing whether it is reasonable for the police to pursue an anonymous tip, we examine the reliability and credibility of the informant, and his or her basis of knowledge, as well as the quantity, quality and reliability of the information given. *State v. Sousa*, 151 N.H. 297, 299 (2004). Here, inclusion of information such as the description and the provision of

a name in reference to a particular incident helped to explain why the police might consider the tip to be reliable and why contacting INS for the defendant's fingerprint card was a reasonable step in light of the information obtained. Accordingly, because the information conveyed to the jury served to demonstrate the reasonableness of the police action in contacting INS, we conclude that the trial court's decision to permit the evidence on that ground was not error.

The defendant also contends that the testimony about the tip was offered for its truth because, during opening statements, the prosecutor used the information in the tip to corroborate the description given by Durbin. The defendant, however, made no objection to the prosecutor's argument during trial. Any argument that the State strayed beyond the trial court's pretrial ruling that the evidence was admitted for a limited, non-hearsay purpose should have been made to the trial court in the first instance, and we will not entertain objections that were not raised during the proceedings below because they are not preserved for our review. *State v. Wong*, 138 N.H. 56, 66 (1993).

Finally, the defendant contends that even if Charewicz's testimony was not hearsay, it was more prejudicial than probative, and, therefore, should not have been admitted. *See* N.H. R. Ev. 403. The State counters that the issue has not been preserved, or, if it has, the defendant does not prevail. As pointed out by the State, at no point did the defendant object to the introduction of any part of Charewicz's testimony on the ground that it would be more prejudicial than probative, nor did he invoke Rule 403's balancing of probative and prejudicial effect. His objection was based upon the Confrontation Clause and not upon the supposed prejudicial nature of the evidence. In fact, the only time prejudice was mentioned was when the trial court ruled, without comment or objection from the defendant, that some portions of the call would be excluded as unfairly prejudicial. Even after this ruling, the defendant did not contend that the testimony permitted by the trial court was more prejudicial than probative. For these reasons, we conclude that the defendant has failed to preserve the issue for our review. *See State v. Pepin*, 156 N.H. 269, 275 (2007).

For the above reasons, we conclude that Charewicz's testimony was properly admitted by the trial court for a non-hearsay purpose. Accordingly, the testimony was not barred by *Crawford*.

*Affirmed.*

BRODERICK, C.J., and DALIANIS and HICKS, JJ., concurred.