NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

—————————————

Hillsborough – southern judicial district
No. 2014-044


THE STATE OF NEW HAMPSHIRE

v.

COLLEEN CARR

Argued: November 12, 2014
Opinion Issued: January 13, 2015


Joseph A. Foster, attorney general (Susan P. McGinnis, senior assistant attorney general, on the brief and orally), for the State.


Keefe & Keefe P.A., of Wilton (William Keefe on the brief and orally), for the defendant.


HICKS, J. The defendant, Colleen Carr, appeals her conviction by a jury on one count of felony criminal solicitation of accomplice to insurance fraud, see RSA 629:2 (2007); RSA 638:20, III (2007), IV(a)(1) (Supp. 2014), and two counts of felony witness tampering, see RSA 641:5, I (2007). On appeal, she argues that the Superior Court (Colburn, J.) erred by: (1) failing to dismiss the criminal solicitation indictment; (2) declining to give the jury two of her requested instructions; and (3) denying her motion to dismiss the second witness tampering conviction on double jeopardy grounds. The defendant also

argues that the evidence was insufficient to convict her of criminal solicitation and of one of the witness tampering charges. We affirm.

I. Background Facts

The jury could have found the following facts. The defendant owned a building at 139 Union Square, in an area known as the "Milford Oval" in Milford. Her mother's real estate business and a tobacco business owned by Richard Fells occupied the first floor of the building. The defendant and her boyfriend, Conrad Kelleher, lived on the second floor, and a tenant and her daughter lived on the third floor.

In late 2012, the defendant and Kelleher discussed selling the building. Kelleher thought that doing so would help the defendant's financial situation, which he knew "wasn't good." Shortly thereafter, the defendant informed Kelleher of her idea to address her situation: she proposed to collect $403,000 in insurance proceeds by having the building burned down. The defendant told Kelleher that because she did not want their belongings to be "ruined," they should move them out but then "bring some old stuff in so it wouldn't look so obvious."

The defendant and Kelleher spoke about involving the tenant in the plan. In mid-January 2013, the defendant approached the tenant, told her "[t]hat she was broke," and said that "[s]he wanted to torch the building to get the insurance money." The defendant offered to pay the tenant $7,000 to "leave for two weeks." The defendant assured the tenant that if the tenant "wanted to keep anything[,] [the defendant] would store it at her mother's house." She also told the tenant "that she would help [her] find a place to live so [the tenant] wouldn't have to worry where [she] was going to live after that." The defendant informed the tenant that she was moving her own belongings "[i]nto her mother's basement," and that "she didn't care" about the businesses located in her building "because they all had insurance." The defendant told the tenant that "she didn't want [her] to tell anybody." Later that evening, the tenant telephoned the defendant and "told her [she] didn't want any part of this scheme." The defendant told the tenant "to get out." A few days later, the tenant spoke to Fells about the defendant's plan because she "was afraid . . . [t]hat the building would be torched and he would lose everything."

Eventually, Kelleher, Fells, and the tenant separately told the police about the defendant's plan. On January 17, Kelleher agreed that the police could record telephone calls between him and the defendant. In the first recorded call, Kelleher told the defendant that the police had requested that he come to the station to talk; Kelleher asked, "[W]hat am I supposed to do?" The defendant responded, "Well, go down and . . . 'I don't know anything,' okay?" She then said, "I think it's got something to do with [the tenant]. . . . She threatened it. She threatened it, . . . okay . . . ?"

In the second call, initiated by the defendant, she told Kelleher to inform the police that the tenant was "on Klonopin" and was often "drunk." She also told Kelleher to tell the police that he knew "nothing" and that whatever the tenant had told them was "a lie." She told Kelleher to say that he "didn't hear nothing." At one point, she said, "What did I just tell you to say?" Kelleher responded, "I'm going to say that the woman is on . . . she takes that stuff and everything else and she drinks a lot." The defendant reminded Kelleher also to tell the police that whatever the tenant told them "was an absolute lie."

In the third call, Kelleher told the defendant that the police had heard rumors about the building being burned down. The defendant asked, "Why didn't you say like I told you, 'Well, the tenant threatened to burn it down. She's always drunk?'"

Shortly after the last call, the defendant called the police herself and left a voicemail message for one of the officers in which she said that the tenant was "drunk all the time," took "Klonopin now, too," had a rent arrearage, and that she had threatened to burn down the building because the defendant had refused to allow the tenant's pregnant daughter to live with her. The defendant was arrested later that evening. In September 2013, the defendant sold the building for $150,000.

II. Analysis

A. Sufficiency of Criminal Solicitation Indictment

The defendant first argues that the criminal solicitation indictment violates Part I, Article 15 of the New Hampshire Constitution. The indictment alleges that the defendant solicited the crime of accomplice to insurance fraud when she purposely solicited the tenant "to leave her apartment for a period of time in order for another person to commit . . . arson [on] the building . . . so that [the defendant] could collect the insurance proceeds." The defendant contends that the indictment is constitutionally inadequate because it fails to allege: (1) the elements of the crime of insurance fraud, see RSA 638:20, II (2007); (2) the method by which the defendant sought to commit insurance fraud; and (3) the elements of the crime of accomplice to insurance fraud, see RSA 638:20, III. We disagree.

"Part I, Article 15 of the State Constitution requires that an indictment describe the offense with sufficient specificity to ensure that the defendant can prepare for trial and avoid double jeopardy." State v. Ericson, 159 N.H. 379, 384 (2009). "To be constitutional, the indictment must contain the elements of the offense and enough facts to notify the defendant of the specific charges." Id. "An indictment generally is sufficient if it recites the language of the relevant statute; it need not specify the means by which the crime was

3

accomplished or other facts that are not essential to the elements of the crime." Id.

"A person is guilty of criminal solicitation if, with a purpose that another engage in conduct constituting a crime, he commands, solicits or requests such other person to engage in such conduct." RSA 629:2. "The statute does not require that the solicited conduct actually occur." State v. Kaplan, 128 N.H. 562, 563 (1986). Rather, "the offense of solicitation is complete once the request has been made." People v. Woodard, 854 N.E.2d 674, 688 (Ill. App. Ct. 2006). The criminal solicitation statute requires the State only to identify the solicited crime. See RSA 629:2 (providing that "[a] person is guilty of criminal solicitation" if, "with a purpose that another engage in conduct constituting a crime," he or she "commands, solicits or requests" that person "to engage in such conduct"). In this way, it is like the attempt statute. See State v. Munoz, 157 N.H. 143, 147 (2008); see also RSA 629:1, I (2007) (providing that "[a] person is guilty of an attempt to commit a crime if, with a purpose that a crime be committed, he does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step toward the commission of the crime").

Also, like attempt, solicitation is an inchoate crime. See RSA 629:1 (2007), :2; see also State v. Jensen, 195 P.3d 512, 517 (Wash. 2008) (explaining that "the crime of solicitation . . . is the most inchoate of the . . . anticipatory offenses"). Solicitation "is the act of trying to persuade another to commit a crime that the solicitor desires and intends to have committed." Robbins, Double Inchoate Crimes, 26 Harv. J. on Legis. 1, 29 (1989). "The mens rea of solicitation is a specific intent to have someone commit a completed crime." Id. Solicitation is like conspiracy in that "disclosure of the criminal scheme to another party constitutes a part of the actus reus." Id. "But, while the actus reus of a conspiracy is an agreement with another to commit a specific completed offense, the actus reus of a solicitation includes an attempt to persuade another to commit a specific offense." Id. at 29-30. The crime of solicitation ordinarily implies the solicitant's rejection of the solicitor's request. See id. at 30. "Thus, solicitation can be viewed as an attempt to conspire." Id.; see also Jensen, 195 P.3d at 517. However, unlike conspiracy and attempt, it requires no overt act other than the offer itself. Jensen, 195 P.3d at 517.

Contrary to the defendant's assertions, the criminal solicitation statute does not require the State to plead and prove the elements of the solicited crime, here, accomplice to insurance fraud. See Munoz, 157 N.H. at 147 (referring to an indictment alleging attempt). Nor is the State required to plead and prove the elements of the crime to which the tenant would have been an accomplice. Because solicitation is an attempt to conspire, and because attempt "is by definition a crime not completed," the State could not have pleaded, factually identified, and proved all of the elements of insurance fraud

or of accomplice to insurance fraud because those crimes had not been carried out.  State v. Johnson, 144 N.H. 175, 178 (1999).  Requiring the State to prove the elements of insurance fraud or of accomplice to insurance fraud would force the State to prove more than is required by the criminal solicitation statute.  See Munoz, 157 N.H. at 147; see also RSA 629:2.

The indictment in this case identified the crime solicited (accomplice to insurance fraud), the requisite mens rea (purposely), and the requisite actus reus (soliciting).  Moreover, the indictment alleges that the defendant solicited the tenant to act as an accomplice to her insurance fraud by leaving her apartment so that "another" could burn down the building and the defendant "could collect the insurance proceeds."  Because it contains the elements of the offense and enough facts to notify the defendant of the charge, we hold that it is constitutionally adequate.  See Ericson, 159 N.H. at 384.

### B.  Jury Instructions

The defendant next asserts that the trial court erred by declining to give the jury her proposed instructions on criminal solicitation and entrapment.  Whether a particular jury instruction is necessary, and the scope and wording of jury instructions, are within the sound discretion of the trial court.  State v. Furgal, 164 N.H. 430, 435 (2012).  We review the trial court's decisions on these matters for an unsustainable exercise of discretion.  Id.  To show that the trial court's decision is not sustainable, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of her case.  Id.

When reviewing jury instructions, we evaluate allegations of error by interpreting the disputed instructions in their entirety, as a reasonable juror would have understood them, and in light of all the evidence in the case.  Id. at 434.  The trial court is not required to use the specific language requested by the defendant.  Id.  Rather, the purpose of the trial court's charge is to state and explain to the jury, in clear and intelligible language, the rules of law applicable to the case.  Id.  We determine whether the jury instructions adequately and accurately explain each element of the offense and reverse only if the instructions did not fairly cover the issues of law in the case.  Id. at 434-35.

### 1.  Criminal Solicitation

The defendant's arguments regarding the criminal solicitation jury instruction stem from her mistaken belief that, to convict her of criminal solicitation, the jury had to find all of the elements of insurance fraud and accomplice to insurance fraud.  For instance, she argues that the trial court did not "break out" the "required elements" of the crime of insurance fraud.  Similarly, she asserts that the trial court failed to instruct the jury that, to

convict the defendant, it had to establish that "[the tenant] knew that there was an insurance policy," "that a false or misleading statement would have been prepared and submitted to an insurance company," and that she "would have assisted with that statement." However, as we have explained, to convict the defendant of criminal solicitation, the State was not required to prove the elements of insurance fraud or accomplice to insurance fraud. Accordingly, the defendant's arguments fail to demonstrate that the trial court's criminal solicitation instruction constituted an unsustainable exercise of discretion.

### 2. Entrapment

The defendant next faults the trial court for failing to instruct the jury about her entrapment defense to the witness tampering charges. For a defendant to be entitled to an instruction on a specific defense, there must be some evidence to support a rational finding in favor of that defense. State v. Mendola, 160 N.H. 550, 555 (2010). "'Some evidence' means more than a minutia or scintilla of evidence." Id. (quotation omitted). "To be more than a scintilla, evidence cannot be vague, conjectural, or the mere suspicion about the existence of a fact, but must be of such quality as to induce conviction." Id. at 555-56 (quotation omitted). "Where there is simply no evidentiary basis to support the theory of the requested jury instruction, the party is not entitled to such an instruction, and the trial court may properly deny the party's request." Id. at 556 (quotation omitted).

Entrapment is an affirmative defense, upon which the defendant bears the burden of proof:

> It is an affirmative defense that the actor committed the offense because he was induced or encouraged to do so by a law enforcement official or by a person acting in cooperation with a law enforcement official, for the purpose of obtaining evidence against him and when the methods used to obtain such evidence were such as to create a substantial risk that the offense would be committed by a person not otherwise disposed to commit it. However, conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

RSA 626:5 (2007).

To be entitled to an instruction on this defense, a defendant must point to "some evidence" that: (1) law enforcement officials induced or encouraged the defendant to commit the offense; and (2) the defendant was not predisposed to engage in it. Mendola, 160 N.H. at 556. Inducement is something more than "merely affording a person an opportunity to commit an offense." RSA 626:5; see Mendola, 160 N.H. at 556. Rather, "[a]n inducement consists of an 'opportunity' plus something else – typically, excessive pressure

6

by the government upon the defendant or the government's taking advantage of an alternative, non-criminal type of motive." Mendola, 160 N.H. at 556 (quotation omitted). "An inducement, by its very nature, contemplates more than a request and an affirmative response." Id. (quotation omitted). "It is more than a solicitation. It is more even than a successful solicitation." Id. (quotation omitted).

The defendant argues that she was entitled to an entrapment instruction because Kelleher, acting at the behest of the police, lied to her during the recorded calls. However, the defendant has made no showing that Kelleher's lies regarding his contact with the police induced her to commit witness tampering in which she was not otherwise predisposed to engage. Thus, the evidence, without more, does not constitute "some evidence" that would support a rational finding that the defendant was induced by law enforcement to commit witness tampering. See id. The defendant's failure to produce "some evidence" that she was induced to commit the charged offenses by law enforcement officials is fatal to her claim that she was entitled to a jury instruction on entrapment. See id. at 557. Accordingly, we need not address the sufficiency of the defendant's proof that she was not predisposed to commit the charged offenses. See id.

### C. Motion to Dismiss Second Witness Tampering Conviction

The defendant next asserts that the trial court erred by denying her motion to dismiss the second witness tampering conviction on double jeopardy grounds. The first witness tampering charge alleged that the defendant, "believing that an official investigation was pending or about to be instituted, . . . purposely attempted to induce or otherwise cause . . . Kelleher to inform falsely to the Milford Police Department" when she told Kelleher "words to the effect of": "'Tell them you don't know anything,'" and "'She threatened it, okay.'" (Emphasis added.) See RSA 641:5, I(a). The second witness tampering charge alleged that the defendant "believing that an official investigation was pending or about to be instituted, . . . purposely attempted to induce or otherwise cause . . . Kelleher to withhold information to the Milford Police Department" when she told him "words to the effect of": "'[T]ell them you don't know anything.'" (Emphasis added.) See RSA 641:5, I(b). She contends that because both indictments alleged that she told Kelleher, "Tell them you don't know anything," the trial court violated her State constitutional guarantee against double jeopardy by imposing sentences for both charges. See N.H. CONST. pt. I, art. 16. The defendant does not advance an argument under the Federal Constitution.

The State counters that each indictment concerned a separate telephone call between the defendant and Kelleher. The State argues that the first witness tampering charge concerned the first telephone call, and the second witness tampering charge concerned the second telephone call. The State also

7

observes that each charge concerned a different statutory variant of witness tampering. The first charge alleged that the defendant induced Kelleher to "inform falsely," see RSA 641:5, I(a), while the second charge alleged that she induced Kelleher to "withhold information," see RSA 641:5, I(b).

The issue of double jeopardy presents a question of constitutional law, which we review de novo. State v. Fischer, 165 N.H. 706, 715 (2013). Part I, Article 16 of the New Hampshire Constitution protects against "successive prosecutions for the same offense after acquittal or after conviction, and against multiple punishments for the same offense." State v. Glenn, 160 N.H. 480, 486 (2010) (quotation omitted). "For the purpose of double jeopardy analysis, two charged offenses cannot be regarded as the same offense if they do not arise out of the same act or transaction." Fischer, 165 N.H. at 715 (quotation omitted); see also Blockburger v. United States, 284 U.S. 299, 304 (1932); cf. State v. Matey, 153 N.H. 263, 270-71 (2006) (deciding whether two offenses are the "same" for right to counsel purposes).

Here, the defendant was charged with witness tampering during two separate telephone conversations. In one conversation, the subject of the first witness tampering charge, the defendant told Kelleher to tell the police that he did not "know anything" and to tell them that the tenant "threatened it." In another conversation, which the defendant initiated, the subject of the second witness tampering charge, the defendant told Kelleher to tell the police that he knew "nothing" and that he "didn't hear nothing." The fact that, in each conversation, the defendant told Kelleher to tell the police that he did not know anything about the planned arson, does not establish that the defendant's conduct during separate telephone calls arose out of the same act or transaction. See Fischer, 165 N.H. at 715 (concluding that the fact that an assault in the living room and a later assault in the kitchen "resulted in injuries to the victim's head and neck does not establish that they arose out of the same act or transaction"). Because the charges arose out of separate transactions, we conclude that the defendant was not subjected to multiple punishments for the same offense and, consequently, that her right against double jeopardy under the State Constitution was not infringed. See id.

D. Sufficiency of the Evidence

The defendant next contends that the evidence was insufficient to convict her of criminal solicitation and witness tampering. "When considering a challenge to the sufficiency of the evidence, we objectively review the record to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Saunders, 164 N.H. 342, 351 (2012) (quotation omitted). We consider "all the evidence and all reasonable inferences therefrom in the light most favorable to the State." Id. (quotation omitted). "[T]he defendant . . . bears the burden of demonstrating that the evidence was insufficient to prove guilt." Id. (quotation omitted).

### 1. Criminal Solicitation

To convict the defendant of felony criminal solicitation, the State had to prove, beyond a reasonable doubt, that, with the purpose "to collect insurance proceeds greater than $1500," she "solicit[ed] another person to engage in conduct constituting the crime of insurance fraud," intending that the person act "as an accomplice." See RSA 629:2 (defining crime of criminal solicitation); see also RSA 638:20, III (defining crime of accomplice to insurance fraud), IV(a) (providing that insurance fraud is a class A felony "if the value of the fraudulent portion of the claim for payment . . . pursuant to an insurance policy is more than $1,500").

The defendant argues that the evidence was insufficient to convict her of criminal solicitation in part because the State failed to prove the elements of the solicited crime, here accomplice to insurance fraud. As previously discussed, that was not the State's burden.

The defendant also argues that there was no evidence to support a jury finding that her purpose was to collect insurance proceeds that exceeded $1,500. We disagree. An employee of the defendant's insurance company testified that, had the defendant's building burned "down to the ground with a total loss, . . . the claim could have been $403,000." Moreover, there was evidence that the tenant told others that the defendant's purpose was to collect $403,000 in insurance proceeds by having the building burned down. The tenant testified that the defendant told her "[t]hat she was broke" and that "[s]he wanted to torch the building to get the insurance money." Viewing the evidence and all reasonable inferences therefrom in the light most favorable to the State, we conclude that a rational juror could have found, beyond a reasonable doubt, that the defendant acted with a purpose to collect insurance proceeds that exceeded $1,500.

Finally, the defendant contends that the evidence was insufficient to convict her of criminal solicitation because, at trial, the tenant "had serious trouble remembering" certain facts and Kelleher's testimony was internally inconsistent. The tenant's memory difficulties and Kelleher's inconsistent testimony were factors for the jury to consider in assessing their credibility. See State v. Hodgdon, 143 N.H. 399, 404 (1999). "The jury is free to accept or reject any portion of a witness's testimony and to resolve any conflicts in testimony." Id. "Credibility determinations are within the sole province of the jury and will be upheld on appeal unless no rational trier of fact could have reached the same conclusion." Id. Here, we cannot say that no rational juror could have found the tenant and Kelleher to be credible witnesses. Accordingly, this argument, like the defendant's other arguments regarding the sufficiency of the evidence of criminal solicitation, is unavailing.

## 2. Witness Tampering

To convict the defendant of the first witness tampering charge, the State had to prove, beyond a reasonable doubt, that, "believing that an official investigation [was] pending or about to be instituted, she purposely attempted to induce or otherwise cause . . . Kelleher to inform to the Milford Police Department falsely" by telling him "words to the effect of . . . , "'Tell them you don't know anything,'" and . . . 'She threatened it, okay?'" See RSA 641:5, I(a). The defendant argues that the evidence was insufficient to convict her of this charge because there is no evidence that she "attempted to influence Kelleher . . . to say something that wasn't true." In so arguing, the defendant views the evidence in the light most favorable to her. However, we must view the evidence in the light most favorable to the State. See Saunders, 164 N.H. at 351. When we do so, we conclude that a rational juror could have found, beyond a reasonable doubt, that when the defendant instructed Kelleher to tell the police that he knew nothing about her arson plan and that the tenant had threatened to burn down the building, she was purposely attempting to induce him to lie to the police.

To the extent that the defendant argues that the evidence was also insufficient to convict her of the second witness tampering charge, she has failed to develop this argument sufficiently for our review. All issues raised in the defendant's notice of appeal, which she did not brief, are deemed waived. See In re Estate of King, 149 N.H. 226, 230 (2003).

Affirmed.

DALIANIS, C.J., and CONBOY, LYNN, and BASSETT, JJ., concurred.