NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Coos
No. 2018-0118

THE STATE OF NEW HAMPSHIRE

v.

JONATHAN L. WOODBURY

Argued: March 28, 2019
Opinion Issued: July 11, 2019

Gordon J. MacDonald, attorney general (Sean R. Locke, assistant attorney general, on the brief and orally), for the State.

Stephanie Hausman, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

LYNN, C.J. The defendant, Jonathan L. Woodbury, appeals his convictions and sentences following a jury trial in the Superior Court (Bornstein, J.) on one count of falsifying physical evidence, see RSA 641:6, I (2016), and two counts of assault by a prisoner, see RSA 642:9, I (2016). On appeal, the defendant challenges: (1) the sufficiency of the evidence to support his conviction of falsifying physical evidence; (2) the trial court's denial of his jury instruction interpreting language in RSA 641:6, I; (3) the trial court's imposition of multiple sentences on the assault convictions; and (4) the trial court's failure to sua sponte instruct the jury on the defense of mutual combat. We affirm.

I

The jury could have found the following facts. On December 8, 2016, the defendant, an inmate at the Northern New Hampshire Correctional Facility in Berlin, was involved in a physical altercation with Matthew Moriarty, another inmate at the facility. At the time of the incident, Moriarty was fighting with his cellmate, Terrence Hartley, and had sustained severe injuries. While most of the dispute between Hartley and Moriarty occurred within their cell, at one point during the fight, Moriarty was outside of the cell when the cell door closed, locking him outside. After attempting to get back inside, Moriarty, while bleeding from his face, spit at Hartley through an opening in the cell door. Immediately thereafter, the defendant, who was watching from the common area of the cellblock, came up behind Moriarty and struck him with his fist on the side of the face. Moriarty then swung at and struck the defendant, who continued the altercation, twice more striking Moriarty with his fist. Following this exchange, the defendant, with the help of another inmate, mopped up Moriarty's blood from the floor and tables in the common area. Meanwhile, Moriarty went into the bathroom to clean blood from his face. Realizing that he was struggling to breathe, he exited the bathroom to press a button on a callbox located in the common area. This action alerted correctional officers that an incident had occurred and that a response team should be sent to the cellblock. The entire incident between the defendant and Moriarty was recorded by video surveillance, which was being monitored by correctional officers from a control room.

When the response team arrived at the scene, they restrained Moriarty, whose face was covered in blood, and removed him from the cellblock. An investigation ensued, resulting in disciplinary actions taken by the prison against the defendant, Moriarty, Hartley, and another inmate.

As a result of the events described above, the defendant was charged with three counts of assault by a prisoner and one count of falsifying physical evidence. Following a jury trial, he was convicted on all charges except for one count of assault. At sentencing, the trial court imposed concurrent sentences of two-and-a-half to five years stand committed on the falsifying physical evidence conviction and the first assault conviction. These sentences were ordered to be served consecutive to the sentence the defendant was serving at the time of the incident. On the second assault conviction, the court imposed a sentence of three-and-a-half to seven years. This sentence was suspended for ten years and conditioned on good behavior and compliance with the court's order.[1] This appeal followed.

---

[1] The suspended sentence, if imposed, was ordered to be served consecutive to the defendant's other sentences.

II

The defendant first argues that the evidence was insufficient to support his conviction for falsifying physical evidence. He claims that, because witnesses at trial testified to facts contrary to the State's evidence regarding the mens rea elements of RSA 641:6, I, the State failed to meet its burden of proof. Although this argument was not raised by the defendant in the trial court, he has invoked plain error review on appeal. See Sup. Ct. R. 16-A. Under plain error review, we may consider arguments that were not previously raised in the trial court. See State v. Noucas, 165 N.H. 146, 160 (2013). "To find plain error: (1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings." Noucas, 165 N.H. at 160 (quotation omitted). The rule is used sparingly and is limited to those circumstances in which a miscarriage of justice would otherwise result. Id.

As an initial matter, the defendant contends that the evidence at trial relevant to his intent was solely circumstantial. The State, on the other hand, asserts that the jury had both direct and circumstantial evidence to consider in determining the defendant's intent. Although our general rule is that we will uphold a jury's verdict unless no rational trier of fact could have found guilt beyond a reasonable doubt, see State v. Kelley, 159 N.H. 449, 454-55 (2009), we employ a different test when the evidence is solely circumstantial, see State v. Ruiz, 170 N.H. 553, 568 (2018). In the latter circumstance, to be sufficient to sustain the verdict, the evidence must exclude all reasonable conclusions except guilt. Ruiz, 170 N.H. at 568. Here, the only evidence to support the mens rea elements of the crime was circumstantial. See State v. Newcomb, 140 N.H. 72, 80 (1995). While the defendant testified regarding his intent, his testimony was offered to negate the requisite intent elements, rather than to support them. When the evidence presented to prove an element of the offense is solely circumstantial, that evidence must exclude all reasonable conclusions except guilt. See State v. Duguay, 142 N.H. 221, 225 (1997). Under this standard, we consider the evidence in the light most favorable to the State, and examine each evidentiary item in the context of all the evidence, not in isolation. Id.

Pursuant to RSA 641:6, I, a person commits the crime of falsifying physical evidence when, "believing that an official proceeding . . . or investigation is pending or about to be instituted," that person "[a]lters, destroys, conceals or removes any thing with a purpose to impair its verity or availability in such proceeding or investigation." RSA 641:6, I. The defendant contends that the evidence at trial was insufficient for the jury to find that he had the purpose to impair the verity or availability of the blood in an investigation he believed was pending or about to be instituted. We disagree.

3

The defendant points to the following statements he made at trial to support his argument that there was insufficient evidence of the statute's mens rea requirements: (1) that he was aware that the common area — where the fight occurred and where he cleaned up the blood — was under video surveillance; (2) that if he had intended to hinder the investigation, he would have cleaned up the blood left by Moriarty in the bathroom, and hid or dumped the mop bucket, which was filled with bloody water from the cleanup; and (3) that his intent instead was to maintain the cleanliness of his living space, as he "took it upon [him]self to clean the blood" because the common area was his "home" and the place where he ate. Aside from his own testimony, the defendant also relies on testimony from other witnesses to support his claim. Specifically, he argues that "[c]ircumstantial evidence from the State's institutional witnesses supported [his] testimony that not every prison assault is investigated, that inmates clean their living spaces, and that blood is seen by those in the prison system as being a potential health problem."

At its essence, however, the defendant's assertion is that, because there was evidence at trial that was contradictory to the State's case, the State failed to establish its burden of proof. This argument is unpersuasive. As we have stated in the past, matters such as weighing evidence, determining witness credibility, and resolving conflicts in witness testimony are left to the jury. See State v. Alwardt, 164 N.H. 52, 57 (2012). In determining witness credibility, the jury may accept some parts and reject other parts of testimony, and adopt one or the other of inconsistent statements by witnesses. State v. Thomas, 154 N.H. 189, 193 (2006). Moreover, when reviewing sufficiency claims, including those involving only circumstantial evidence, we view the record in the light most favorable to the State, Duguay, 142 N.H. at 225, which involves resolving issues of credibility in the State's favor, see Ruiz, 170 N.H. at 569. Given this standard, we hold that, notwithstanding the testimony relied on by the defendant, there was sufficient evidence at trial to exclude all reasonable conclusions except guilt. Id. at 568.

As to the issue of whether the defendant knew or believed that an investigation was pending or about to be instituted, the defendant himself testified that he was aware, when cleaning up the blood, that the common area was being video monitored by correctional officers. His testimony was corroborated by the prison housing lieutenant's testimony that staff monitoring the video surveillance are expected to observe an altercation and respond accordingly. Indeed, testimony from a member of the response team established that, following the altercation on December 8, correctional officers reported to the scene of the incident. In addition, an investigator testified that, where there is evidence of serious bodily injury, an investigator is notified and an investigation ensues. Based on the totality of the evidence, there was sufficient evidence to exclude all reasonable conclusions except that the defendant knew or believed that an investigation was pending or about to be instituted.

4

There was also testimony to support the jury's conclusion that the defendant intended to impair the verity or availability of evidence in such an investigation. The investigator testified that, had the blood not been removed by the defendant, it would have been included in the evidence gathered by the correctional officers. The investigator further testified that inmates often clean up blood after an assault to avoid being detected, locked in their cells, or punished. Although it is true, as the defendant contends, that there was testimony at trial that inmates at the prison are assigned jobs, such as mopping floors, there also was testimony that inmates are allowed to clean up blood only after the conclusion of an investigation, and even then may not do so unless directed by prison staff because there are specific procedures for removing blood. In addition, the jury was presented with the video recording of the incident between the defendant and Moriarty, which depicts the defendant cleaning up the blood, with the help of another inmate, immediately following the altercation. Viewing this evidence in the light most favorable to the State, we conclude that there was sufficient evidence to exclude all reasonable conclusions except that the defendant cleaned up the blood with the purpose of impairing its verity or availability in an impending investigation. Because we conclude that the evidence was sufficient to support the jury's verdict, the first prong of the plain error test is not satisfied, and we therefore need not address the remaining prongs. See State v. Dodds, 159 N.H. 239, 246 (2009) (declining to address the remaining plain error prongs where there was no error).

III

The defendant next contends that the trial court erred in denying his request for a jury instruction that the State had to prove that the defendant believed that an <u>official</u> investigation was pending or about to be instituted. RSA 641:6 provides, in pertinent part, that to be convicted of falsifying physical evidence, a defendant must have acted with the belief "that an official proceeding, as defined in RSA 641:1, II, or investigation is pending or about to be instituted." RSA 641:6 (2016).

The defendant was charged under this statute with cleaning up blood with the belief "that an investigation . . . was about to be instituted." On the third day of trial, prior to closing arguments, the parties discussed with the court its proposed jury instructions. The defendant, asserting that "investigation" is modified by the word "official" in the statute, requested that the court define "official investigation." See RSA 641:6. The court denied the defendant's request. The court stated that "official proceeding" is defined by the Criminal Code while "investigation" is not, and that "investigation," as used in the statute, is "explicitly . . . worded in the alternative." Based on the statute's wording, the court concluded that "investigation" does not require further definition or explanation, and thus "is defined by its plain, ordinary meaning."

5

On appeal, the defendant maintains that the word "official" in the statute modifies both "proceeding" and "investigation." The State, on the other hand, asserts that the term "investigation" should be given its plain and ordinary meaning, and therefore does not require further definition through a jury instruction.

Whether a jury instruction is necessary, and the scope and wording of the instruction, generally fall within the sound discretion of the trial court. State v. Boggs, 171 N.H. 115, 122 (2018). However, when a jury instruction raises a question of law relating to the State's burden of proof, we review such matters de novo. Id. Furthermore, resolving the issue presented by this appeal requires us to interpret a provision of the Criminal Code. See State v. McKeown, 159 N.H. 434, 435 (2009). The interpretation of a statute is also a question of law, which we review de novo. Id. We construe the Criminal Code "according to the fair import of [its] terms and to promote justice." RSA 625:3 (2016). In so doing, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. State v. Labrie, 171 N.H. 475, 482 (2018). We are the final arbiters of the legislative intent as expressed in the words of the statute considered as a whole. Id. at 482-83. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. at 483. Absent an ambiguity, we will not look beyond the language of the statute to discern legislative intent. McKeown, 159 N.H. at 435.

We agree with the trial court that the plain language of RSA 641:6 encompasses two alternative types of proceedings: "official proceedings" and "investigations." See RSA 641:6. First, the statute signals this distinction by separating the two types of inquiries with the word, "or." See id. As we have previously stated, "[t]he word 'or' is defined as a function word to indicate an alternative between different or unlike things." In re Richard M., 127 N.H. 12, 17 (1985) (quotation omitted). Second, the statute includes the phrase, "as defined in RSA 641:1, II," between the two types of inquiries. See RSA 641:6. This phrase is of particular importance, as it signifies to the reader of the statute that "official proceeding" is a term of art defined by the legislature while "investigation" is not. Because there is no indication from the plain language of the statute that investigation was meant to be qualified by the word "official," see Labrie, 171 N.H. at 482-83, we conclude that the trial court did not err in failing to instruct the jury on the definition of "official investigation," see Boggs, 171 N.H. at 122.

In support of his contrary argument, the defendant relies primarily on our decision in State v. Kousounadis, 159 N.H. 413 (2009), wherein we interpreted the statute defining deadly weapon. See Kousounadis, 159 N.H. at 423. "A deadly weapon is any firearm, knife or other substance or thing which, in the manner it is used, intended to be used, or threatened to be used, is

6

known to be capable of producing death or serious bodily injury." Id. (quotation omitted). The defendant in Kousounadis argued that the trial court erred in failing to instruct the jury on the definition of the term "deadly weapon" because the word "firearm," as used in the statute, is qualified by the phrase "used, intended to be used, or threatened to be used" in a manner "known to be capable of producing death or serious bodily injury," and without this definition the jury was precluded "from rendering a finding on a necessary element of the felony criminal threatening charge." Id. at 422-23. Our focus, in conducting the statutory analysis, was on the use of the comma after "firearm," and the omission of the comma after "knife." Id. at 423-24. We determined that the statute had two reasonable interpretations. Id. First, that the comma after "firearm" indicated the legislature's intent to separate the weapon from the other items listed, deeming it a per se deadly weapon. Id. Second, that the use of the comma was merely the legislature's grammatical choice in constructing a list of items to be modified by the qualifying phrase in the latter part of the statute. Id. Finding the statute ambiguous, we looked to legislative history for further clarification, ultimately deciding that the legislature had "intended for the qualifying phrase . . . to modify each item listed, including 'firearm.'" Id. at 423-25.

As demonstrated above, however, the language in the deadly weapon statute presented an ambiguity that is not present here. In Kousounadis, the statute included a list of three items, and the issue on appeal was whether each item in that list was qualified by a phrase in the latter part of the statute. Id. at 422-23. Here, in contrast, RSA 641:6 includes two distinct types of proceedings that, by the plain and unambiguous language of the statute, are clearly distinct. Thus, the word "investigation" is not modified by the word "official," and the trial court did not err in failing to define "official investigation" in its instructions to the jury.

IV

The defendant next argues that the trial court plainly erred in imposing multiple sentences for two charges alleging the same act occurring on the same day. He contends that the trial court's alleged error implicates his state and federal constitutional rights to freedom from double jeopardy, clarity in charging documents, and juror unanimity as to the acts charged. See N.H. CONST. pt. I, arts. 15, 16; U.S. CONST. amend. V; State v. Greene, 137 N.H. 126, 128 (1993). When a defendant argues that his rights have been violated under both the State and Federal Constitutions, we consider the arguments first under our State Constitution and rely upon federal law only to aid our analysis. State v. Martinko, 171 N.H. 239, 242 (2018). Because we find that no error occurred, the defendant's argument fails on the first prong of plain error review. See State v. Addison (Capital Murder), 165 N.H. 381, 562-63 (2013).

7

The Double Jeopardy provisions of the State and Federal Constitutions provide protection against: (1) subsequent prosecution for the same offense after acquittal; (2) subsequent prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. Martinko, 171 N.H at 242. The defendant argues that the trial court's imposition of multiple sentences on his assault convictions was plain error because the charges were legally and factually identical. This assertion requires us to determine whether the defendant's course of conduct constitutes more than one violation of a single statutory provision. See id. We refer to the category of cases that address this scenario as "unit of prosecution" cases. Id. To determine whether charged offenses violate the double jeopardy protections of our State Constitution in unit of prosecution cases, we examine whether proof of the elements of the crimes as charged will require a difference in evidence. Id.[2]

The State charged the defendant with three counts of the simple assault version of the assault by prisoner offense. See RSA 631:2-a, I(a) (2016); RSA 642:9, I. All three indictments read as follows:

> [The defendant] . . . did commit the crime of Assaults by Prisoners: Simple Assault, in that he, while being held in official custody . . . , knowingly caused unprivileged physical contact to [Moriarty], in that [he] struck [Moriarty] with his fist, an act constituting Simple Assault under RSA 631:2-a[, I(a)].

"A person is guilty of simple assault if he . . . [p]urposely or knowingly causes bodily injury or unprivileged physical contact to another." RSA 631:2-a, I(a). We have defined "unprivileged physical contact" as "all physical contact not justified by law or consent." State v. Burke, 153 N.H. 361, 364 (2006). So long as there were dissimilar facts to prove that the defendant committed three separate assaults, there was no double jeopardy violation. See State v. Leavitt, 165 N.H. 32, 33-34 (2013).

The evidence presented at trial indicated that the defendant made unprivileged physical contact with Moriarty on three separate occasions: the first occurring immediately after Moriarty spit through the window into his cell, and the second and third occurring at independent times during the subsequent altercation between the defendant and Moriarty. Moreover, the testimonial evidence provided by the State was corroborated by a video recording of the altercation, which depicts the three distinct assaults. Contrary to the defendant's assertions that "there was nothing preventing the jury from

---

[2] "Although we have consistently articulated this test, we have not consistently applied it and have previously invited parties to suggest a formulation of the double jeopardy test to be applied under our State Constitution." Martinko, 171 N.H. at 242-43 (quotation omitted). Neither party has addressed our invitation in this case.

reaching two guilty verdicts on the same act," the jury was provided with the evidence necessary to distinguish the three assaults.

To the extent that the defendant contends that the trial court erred in failing to instruct the jury that they must find distinct acts, this argument is belied by the record. The trial court instructed the jury:

> Now each of the charges against this Defendant constitutes a separate offense. You must consider each charge separately and determine whether the State has proven the Defendant's guilt beyond a reasonable doubt. The fact that you may find the Defendant guilty or not guilty on any one of the charges, should not influence your verdict with respect to the other charges.

Although the defendant refers to this instruction as a "general instruction," it nonetheless clearly conveyed to the jury the point that each charge represented a separate offense, and that the jury could not rely on the evidence in support of one offense to support a conviction on another offense. The court also instructed that the "verdict must be unanimous." We presume that the jury followed the court's instructions. Leavitt, 165 N.H. at 33.

For the same reasons that we reject the defendant's double jeopardy argument, we also reject his assertion that the sentences imposed by the trial court violated his constitutional rights to clarity in charging documents and juror unanimity as to the acts charged. See State v. Davis, 149 N.H. 698, 704 (2003) ("An indictment is generally sufficient if it recites the language of the relevant statute; it need not specify the means by which the crime was accomplished or any other facts that are not essential elements of the crime."); Greene, 137 N.H. at 130 (stating that "a general instruction to the jury on the requirement of a unanimous verdict is sufficient"). Finally, we reach the same conclusion when we review the defendant's federal double jeopardy claim. See Leavitt, 165 N.H. at 33-34 (stating, in consideration of a federal double jeopardy claim, that the claim fails so long as there is evidence at trial to clearly distinguish between the separate offenses).

V

Lastly, the defendant argues that the trial court erred in failing to give an instruction on the defense of mutual combat. See RSA 642:9, IV (2016) (noting that simple assaults that are "committed in a fight entered into by mutual consent" are misdemeanors). He contends that he was entitled to a jury instruction on this defense because there was sufficient evidence in the record to support a rational finding in favor of the defense.

Following the jury's verdict, the defendant moved to set aside the verdict and for a new trial. In his motion, he argued that: (1) defense counsel was

ineffective in failing to request a jury instruction on the defense of mutual combat; and (2) the trial court had erred in failing to sua sponte provide such an instruction. The trial court ruled that the defendant was not entitled to a new trial because "[t]here was no evidence to support a mutual combat jury instruction presented in th[e] case."

RSA 526:1 provides that "[a] new trial may be granted in any case when through accident, mistake or misfortune justice has not been done and a further hearing would be equitable." RSA 526:1 (2007). The grant of a new trial is within the discretion of the trial court, and we will not overturn the court's determination absent an unsustainable exercise of discretion. Hodgdon v. Weeks Mem. Hosp., 128 N.H. 366, 368 (1986). To show that the trial court's decision is not sustainable, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case. State v. Addison, 160 N.H. 792, 796 (2010). We do not find an unsustainable exercise of discretion here.

Pursuant to RSA 642:9, IV, an assault by a prisoner in the form of a simple assault "is a class B felony . . . unless committed in a fight entered into by mutual consent, in which case it is a misdemeanor." RSA 642:9, IV. "[M]utual consent requires that both parties agree to participate in the fight, either expressly or by implication." State v. Place, 152 N.H. 225, 227 (2005).

The defendant argues that there was evidence presented at trial that, following the first strike of Moriarty by the defendant, the two engaged in mutual combat. To support this argument, he points to the following witness testimony: (1) from Moriarty that he "tried to fight [the defendant] and [the defendant] ran off at one point"; (2) from the defendant that Moriarty "swung at [him]" and he "swung back"; and (3) from prison staff that the two squared up and took aggressive positions as though they were going to fight, and that Moriarty swung at and struck the defendant at least once. He contends that because there was "more than a scintilla" of evidence of mutual combat, the court erred in not instructing the jury on the defense.

For a defendant to be entitled to an instruction on a specific defense, there must be some evidence to support a rational finding in favor of that defense. State v. Carr, 167 N.H. 264, 271 (2015). "Some evidence" means more than a minutia or scintilla of evidence. Id. To be more than a scintilla, evidence cannot be vague, conjectural, or the mere suspicion of a fact, but must be of such quality as to induce conviction. Id. When there is simply no evidentiary basis to support the theory of the requested jury instruction, the party is not entitled to such an instruction, and the trial court may properly deny the party's request. Id.

We agree with the trial court that there was insufficient evidence at trial to support a rational finding in favor of a mutual combat defense. As the

10

record and the video recording indicate, Moriarty's back was turned to the defendant when the defendant first struck Moriarty and initiated the altercation. After the initial blow by the defendant, Moriarty attempted to flee while the defendant pursued him. See Place, 152 N.H. at 228 (finding no support for mutual combat instruction where defendant made derogatory statements, victim slapped defendant and entered another room in an attempt to get away, and defendant hit or pushed victim from behind). In addition, when Moriarty was first struck by the defendant, he had already suffered severe injuries from his fight with Hartley, and was bleeding and "disoriented." Although Moriarty stated that he "engaged" in fighting with the defendant, and confirmed that the two "exchange[d] blows," under all the circumstances, this evidence is not enough to support an implicit or express agreement on the part of Moriarty to voluntarily engage in mutual combat with the defendant. Because there was insufficient evidence in the record to support a rational finding in favor of a mutual combat defense, see Carr, 167 N.H. at 271, we conclude that the trial court did not err in failing to sua sponte offer such an instruction, cf. Noucas, 165 N.H. at 161-62 (suggesting that courts refrain from taking sua sponte action, particularly where defense counsel may have strategic reasons for not pursuing certain avenues at trial).

In light of this conclusion, it necessarily follows that the defendant's ineffective assistance of counsel claim also must fail. See State v. Cable, 168 N.H. 673, 685 (2016) ("Failing to advance a meritless argument . . . does not constitute ineffective assistance of counsel." (quotation omitted)).

VI

For the reasons stated herein, we affirm the defendant's convictions and sentences.

Affirmed.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

11